## KNIGHT vs. LEARY.

*February 10 — March 14, 1882.*

EJECTMENT. *(1) No adverse possession against government. (2, 3) Proof of entry of land at land office. (3, 4) Unexplained alteration of entry. (5) Force of recitations in patent as evidence. (6) Acquiring additional land, under homestead law, without residence thereon. (7) Alienation by deed before issue of patent. (8, 9) Notary's certificate of acknowledgment of foreign deed of Wisconsin land. (10) Mala fides in purchase. (11) Evidence that grantee holds land in trust.*

1. No adverse possession of land is operative against the government.

2. If the record in the office of a register of deeds of a county in this state, of a certified copy of the records of a U. S. land office in the state, is evidence of the entries of land therein stated, still such record will be controlled by a certified copy of such land office records, introduced in evidence, and showing error in the registry.

3. The evidence in this case, in reference to the original entry by C. of land under a land warrant, including the certificate of the location of such warrant, issued by the land office at the time, the proper monthly abstract of locations made at said office, and the patent issued by the United States upon such entry — *held* to show conclusively that the entry did not cover the land here in dispute, notwithstanding a subsequent unexplained alteration of the entry upon the books of the office, and the record of the entry as so altered in the office of the register of deeds of the county.

4. In the absence of evidence explaining the alteration in such entry, or showing that C. ever purchased, paid for or located the land here in dispute, or acquired any interest therein from the government, the alteration is *held* inoperative for any purpose.

5. Where a patent of land from the United States recites that the patentee's claim thereto "has been established and duly consummated in conformity to law," and that the instrument was issued pursuant to certain specified acts of congress, it must be *presumed that such recitals are true*, if there is any method by which, consistently with the law and the facts in proof, a valid entry of the kind could have been made by the patentees.

6. Under the act of congress approved April 4, 1872 (now found as sec. 2306, R. S. of U. S.), any person of certain described classes who had theretofore entered, under the homestead law, a quantity of land less than 160 acres, was permitted to enter enough additional land to make up the full quantity of 160 acres, *without residing* upon such additional tract.

The tract here in question being only forty acres, and plaintiff's grantor having received a patent therefor containing the recitals above described, and being shown never to have resided upon said land, it is presumed (in the absence of evidence to the contrary) that he acquired a right to enter it under the acts just mentioned.

7. One who has entered land under the homestead law may alienate it before the patent issues, in the absence of anything in the statute forbidding such alienation; and the patent, when issued to him, will vest the title in his previous grantee by deed of warranty.

8. The certificate of acknowledgment of a deed is no part of its execution; and sec. 10, ch. 86, R. S. 1858, as amended by ch. 188 of 1859, did not prescribe the form of a certificate of acknowledgment of a deed executed out of the state before a notary public, or require it to be made in accordance with the laws of the place where it was made; and such a certificate is sufficient where it would have been in substantial compliance with the laws of this state if made here.

9. Where, therefore, a deed of substitution by an attorney in fact to convey land, was acknowledged before a notary public in the District of Columbia, and the notary's certificate failed to recite, as required by the laws of congress then in force in said district, that the grantor named in the deed was well known to him, or that his identity was proved, etc.: Held, that the certificate was sufficient.

10. The mere purchase of land with knowledge that a person is in possession claiming title adverse to that of the vendor, in good faith, and has paid for the land, is not a fraud in the law.

11. In ejectment against A., the fact that B. paid for the land when the deed was made to A., without proof that the deed was so taken by A. without the consent or knowledge of B., is no evidence that A. holds the land in trust for B. or his heirs.

APPEAL from the Circuit Court for *La Fayette* County. Ejectment, to recover the S. E. ¼ of the N. E. ¼ of section 27, township 2, range 3 east, in the county of La Fayette. Complaint in the usual form. The answer of the defendant contains, *first*, a general denial; *second*, an averment that the defendant holds the legal title to the land claimed in trust for the widow and three minor children (naming them) of Timothy Leary, deceased, who are in possession of the land; and *third*, an averment that there is a defect of parties defendant, in that the said widow and her children are not made parties to the action. The answer also contains a counterclaim, in which it

is alleged that the defendant, his grantors, and the beneficiaries, for whom he holds the land in trust, have been in the peaceful adverse possession continuously from 1852 to the present time under claim of title founded upon an entry from the United States, and of absolute deeds of conveyance duly of record in the register's office of the proper county, all of which was well known to the plaintiff before he acquired the pretended title under which he claims the land.

It is further alleged that in 1878 the plaintiff, conspiring with persons unknown to the defendant, and with intent to cheat and defraud the defendant and said prior purchasers and beneficiaries, fraudulently obtained and placed on record in said county a deed of such land; also, that with like knowledge, conspiracy and intent, the plaintiff, in 1879, fraudulently made an entry of and procured a patent for the land from the United States, and placed the same on record in said register's office. The relief demanded in the counterclaim is, that the pretended entry, patent and deed be adjudged fraudulent and void as against the defendant and said beneficiaries; that the same be cancelled and annulled; and that the defendant be adjudged the owner of the land in trust as aforesaid. A reply denying the allegations contained in the counterclaim was interposed by the plaintiff. The undisputed evidence given on the trial proves that when the action was brought the defendant was in the possession of the land claimed, and that he held such possession under a deed executed by one Doty and his wife in 1865, purporting to convey the land to him in fee; also that Timothy Leary paid the consideration expressed in the deed, and occupied the land until his death in 1873. After his death the defendant cultivated the land, and from time to time delivered or paid to the widow of Timothy Leary portions of the proceeds thereof. Neither the plaintiff nor any person through whom he claims title to the land, was ever in the possession of it. The evidence of title is stated in the opinion. The circuit judge directed the jury to find for

the defendant, and they returned a verdict accordingly. The plaintiff appealed from the judgment entered pursuant to the verdict.

For the appellant there was a brief by *Orton & Osborn*, and oral argument by *Mr. Orton*. They argued, *inter alia*, that the acts of congress giving homesteaders who have entered homesteads less in quantity than 160 acres, the right to enter enough of the unappropriated public domain, in addition to the quantity already entered by them, to equal 160 acres in all, does not require any residence by the homesteader on such additional homestead. The government has so construed the law, and has adopted the practice of issuing a homestead certificate to claimants proving themselves entitled to such additional homestead, which the claimant may locate upon the unappropriated public domain any where, without regard to possession of it. Act of May 20, 1862, 12 Stats. at Large, 392; Act of April 4, 1872, 17 Stats. at Large, 49; Act of June 8, 1872, 17 Stats. at Large, 333; Act of March 3, 1873, Laws of 1872-3, 605; R. S. of U. S., sec. 2306. The entry in this case was made under such an additional homestead certificate. The patent is conclusive evidence of title in the patentee against the government and all persons not showing a prior or paramount right to the title from the government. *Field v. Seabury*, 19 How., 332; *Johnson v. Towsley*, 13 Wall., 72; *Shepley v. Cowan*, 1 Otto, 331; *Moore v. Robbins*, 6 id., 530; *Parkison v. Bracken*, Burnett, 13. The patent is evidence that all the incipient steps have been regularly taken. *Schnee v. Schnee*, 23 Wis., 377. Though the power and deed bear date anterior to the patent, yet the title of Nance under the patent inures to his grantee, under the covenants in the deed. Rawle on Covenants, 410. The substitution under the power was acknowledged March 13, 1878. Under the law as it then was, this acknowledgment before a notary public out of the state was sufficient. R. S. 1858, ch. 86, sec. 10, as amended by ch. 188, Laws of 1859.

For the respondent there was a brief by *Henry S. Magoon* and *Arthur J. O'Keefe*, and oral argument by *Mr. Magoon.* They argued, among other things, that actual residence, improvement and cultivation by the claimant in person were necessary to the valid entry of a homestead; and that the homesteader had no power to assign his certificate of location or to sell or transfer his homestead right, prior to the patent, citing R. S. of U. S., secs. 2263, 2288, 2447.

LYON, J.   The following facts relating to the title of the land in controversy are established by the proofs:  December 1, 1852, one Jefferson Cutter, located military land warrant certificate No. 19,610 on 160 acres of land in section 27, township 2, range 3 east, in the county of La Fayette.  This location was originally entered in the tract book kept in the proper local United States land office as being upon the E. ½ of S. E. ¼, the S. W. ¼ of S. E. ¼, and the S. E. ¼ of S. W. ¼ of that section.  The certificate of such location issued to Cutter by the register of such land office, and the monthly abstract for December, 1852, of such location, contain the same descriptions of the land thus located, as does also the patent issued by the United States to Cutter two years later. Subsequently to the making of the original entry in the tract book, the same was altered by erasing "southwest," where it last occurs in the description, and interlining over the same "northeast," so that the description of the last tract read "the southeast qr. of the northeast qr.," which is the land in controversy.   When this alteration was made, by whom, under what circumstances, or by what authority, does not appear. The tract book remained in this altered condition until April 5, 1878, when it was again altered by restoring the original description of the lands located by and patented to Cutter.

At some time, probably intermediate the first alteration of the tract book and the last alteration thereof, a document, purporting to be a certified copy from the records of the United

States local land office above mentioned, showing by whom each tract of land in the county of La Fayette was entered from the United States, was recorded in the office of the register of deeds of that county, in a volume known as the United States entry book. This record shows that on December 1, 1852, Jefferson Cutter entered the S. E. ¼ (160 acres), the N. E. ¼ of S. W. ¼ and *S. E. ¼ of N. E. ¼* (80 acres) of said section 27. The last description is the land in controversy.

The defendant put in evidence this record in the office of the register of deeds, and it is the only evidence in the case tending to show that Cutter, or any grantee of his, ever acquired title to the land from the United States. In January, 1864, Cutter and wife conveyed the land in controversy to one Doty, and in November, 1865, Doty and wife conveyed the same to the defendant. Both conveyances contain the usual covenants of seizin, and of warranty against incumbrances.

The plaintiff's claim of title is founded upon the following facts: January 10, 1878, one John Nance executed to Charles D. Gilmore a power of attorney, irrevocable, authorizing the latter to locate the additional homestead of Nance, under certain acts of congress, on the land in controversy, and to sell and convey the same for such sum as he might deem proper, and to execute deeds therefor in the name of Nance and wife, with or without covenants of warranty. The instrument also contains the usual power of substitution. By a writing indorsed on such power of attorney and dated March 13, 1878, Gilmore substituted Wendel A. Anderson in his place to execute the intendments of such instrument. On May 3, 1878, Nance and wife, by Anderson as their attorney in fact, conveyed the land in controversy to the plaintiff by deed of warranty containing all of the usual covenants. January 23, 1879, the United States patented the land to Nance. This patent is headed "Homestead certificate No. 3,871 — application 7,816," and contains the following recital: "Whereas, there has been

deposited in the general land office of the United States a certificate of the register of the land office at La Crosse, Wisconsin, whereby it appears that, pursuant to the act of congress approved 20th of May, 1862, 'to secure homesteads to actual settlers on the public domain,' and the acts supplemental thereto, the claim of John Nance has been established and duly consummated in conformity to law for the S. E. ¼ of the N. E. ¼ of section 27," etc.

After the above general statement of the various conveyances and instruments affecting the title to the land in question, we proceed to consider and determine the questions presented in the record, and argued by the respective counsel.

I. The defendant's claim of title will first be considered. It is scarcely necessary to say that the alleged adverse possession of the land by the defendant and his grantors, or by Timothy Leary and his heirs, does not strengthen the defendant's claim of title; for no adverse possession is operative against the government. The defendant can be in no better position to assert title by virtue of an adverse possession for ten or twenty years, founded upon the deed from Cutter to Doty, and from Doty to himself, than he would have been had the land remained vacant and unoccupied until entered or located by Nance. The defendant's claim of title, therefore, is founded alone upon the record in the office of the register of deeds of La Fayette county of the alleged transcript from the United States land office, which shows on its face that the land in controversy was entered by Cutter. It is supposed that there is some statute which authorizes this record, and makes it competent evidence, although we have not been referred to it, and have been unable to find it. No objection for incompetency was made against the admission in evidence of that record, and it is assumed that it was properly admitted.

The date of the alleged entry by Cutter, contained in that record, and the fact that the entry covers portions of the same land upon which Cutter located his bounty land-warrant, sat-

isfactorily show that the transcript so recorded was intended to be a transcript from the tract book in the land office of Cutter's location of his land warrant No. 19,610. By the introduction of the certified copy of the tract book, the transcript recorded in the office of the register of deeds is proved erroneous in several particulars. Of course the entries in the tract book must control when it is made to appear that the recorded transcript therefrom is inaccurate. But, in respect to the land in question, the recorded transcript is a correct copy of the tract book as the same was after the first alteration thereof, above mentioned, had been made. Hence the effect of that alteration upon the title must be determined. The evidence leaves no room to doubt that Cutter located his warrant upon the S. E. ¼ of the S. W. ¼ of section 27, and not upon the S. E. ¼ of the N. E. ¼ of that section, which is the land in controversy. Undoubtedly such was the original entry in the tract book. This is abundantly, indeed conclusively, proved by the descriptions in the certificate of location issued at the time, in the monthly abstract, and in the patent issued to Cutter. .

In the absence of any proof explanatory of the alteration, or that Cutter ever purchased, paid for or located the land, or that the government has done any act tending to show that it ever conferred upon Cutter any right to or interest therein, but conveyed other lands to him pursuant to the original entry and certificate of location, it must be held that the alteration is inoperative for any purpose, and hence that neither Cutter nor the defendant, who claims under him, ever had any title to, or legal or equitable interest in, the land in question.

II. But it is settled that the plantiff in ejectment must recover, if at all, upon the strength of his own title, and not upon the want of title by his adversary. This rule requires us to determine whether the plaintiff has established title in himself.

*First.* It was proved that Nance, the original patentee and

the grantor of the plaintiff, never occupied the land. As nearly as can be gathered from the record, the learned circuit judge held that occupancy by Nance was essential to a valid location of the land under the homestead laws; and for want of it the patent was held invalid, and a verdict for the defendant directed.

It is provided in the homestead laws (U. S. R. S., 424, sec. 2305), that "no patent shall issue to any homestead settler who has not resided upon, improved and cultivated his homestead for a period of at least one year after he shall have commenced his improvements." The circuit judge held that this provision is decisive against the validity of the patent. The patent issued to Nance recites that his claim thereto "has been established and duly consummated in conformity to law," and that it was issued pursuant to the act of congress approved May 20, 1862, "to secure homesteads to actual settlers on the public domain," and the acts supplemental thereto. It is manifest that if there is any method by which a valid entry of the land, under the recited acts, could have been made without actual occupancy, in the absence of any proof to the contrary, it must be presumed that the above recitals are true; that such method was adopted in the present case; and that the patent is valid.

Section 2 of the act of congress entitled "An act to enable honorably discharged soldiers and sailors to acquire homesteads on the public lands of the United States," approved April 4, 1872, is as follows: "Any person entitled, under the provisions of the foregoing section, to enter a homestead, who may have heretofore entered under the homestead laws a quantity of land less than 160 acres, shall be permitted to enter, under the provisions of this act, so much land as, when added to the quantity previously entered, shall not exceed 160 acres." 17 Stats. at Large, 49.

By another act, approved June 8, 1872, the section was amended to restrict the additional entry to land "contiguous to the tract embraced in the first entry." 17 Stats. at Large,

333.   But by another act, approved March 3, 1873, the restriction was removed by a restoration of the original section above quoted, and it now stands as section 2306 in the revision.   We understand the effect of these acts to be, that in the cases mentioned in section 2306 the additional entry may be made of any of the public domain subject to private entry, without regard to contiguity or occupancy.   It would be absurd to require the homesteader who had already resided upon, improved and cultivated, say 120 acres of land, and thereby established his right thereto, to go through the same process on the additional 40 acres which he desires to obtain under section 2306, before he can obtain it.   The statute has enacted no such absurdity, but is content with a residence upon and the cultivation and improvement of one parcel of the 160 acres, if it be in separate parcels.   This view, we understand, accords with the practice of the land department of the government.   Indeed, it is not perceived how any other practice could be upheld under the statutes.

Here, then, we have a method by which Nance could have obtained a valid patent of the land from the government without an actual occupancy of the land.   It was stated on the argument, and not denied, that the land was entered by Nance under the provisions of section 2306, and there are things in the record which corroborate the statement.   But, however that may be, inasmuch as there is nothing in the evidence to negative it, it must be presumed, in support of the patent and the recitals therein, that it was so entered.   It must therefore be held that the patent to Nance is valid, and conveyed the whole title of the government.

*Second.*   We are now to examine the title claimed by the plaintiff.   The deed from Nance, under which the plaintiff claims, was executed before the patent was issued.   The learned counsel for the defendant argues that the deed was void for that reason.   He has not cited any statute which in terms prohibits alienation before the patent issues, but insists

·that the spirit of the homestead laws is opposed to it, and that, in the absence of express statutory authority to alienate, the right does not exist. We are unable to concur in these views. Without entering into an extended discussion of the subject, it is sufficient to say that the .law does not favor restraints upon alienation, and nothing .short of a positive provision to that effect will justify the court in holding that a statute imposes such restraints. Finding no such provision, we must hold that Nance might alienate the land before the patent issued.

The patent issued to him, but his conveyance to the plaintiff, theretofore executed, was by a warranty deed with full covenants. Applying a very familiar principle to the case, the absolute title in fee-simple which the patent conveyed to Nance vested at once in the plaintiff by virtue of his deed, unless such deed is invalid for another reason, now to be considered.

*Third.* The power of attorney executed by Nance and wife to Gilmore was executed under their hands and seals in the state of Missouri, was attested by two witnesses, and duly acknowledged before a justice of the peace of that state. It has attached to it the certificate of authentication required by the Revised Statutes of 1858, ch. 86, sec. 10, then in force in this state. The execution, acknowledgment and authentication are in substantial compliance with the provisions of sections 9 and 10 of that chapter, and undoubtedly conferred upon Gilmore the powers specified in the instrument, one of which was the power of substitution.

The instrument by which Gilmore sought to substitute Anderson to execute the powers so conferred by Nance and wife upon him, was executed in due form in the District of Columbia, under the hand and seal of Gilmore, and was also attested by two witnesses. It was acknowledged by Gilmore before a notary public, who affixed his official seal to his certificate. The body of the certificate of acknowledgment (omitting

venue, signature and seal) is as follows: "On this 13th day of March, 1878, personally came Charles D. Gilmore and acknowledged the above assignment made by him to be his free act and deed, before me." No certificate of authentication is attached to the instrument. The law of congress in force in the District of Columbia requires the officer taking the acknowledgment of a conveyance of land to certify in the certificate of acknowledgment (or rather to recite) that the grantor named in the deed is well known to him, or that his identity was proved by the oaths of credible witnesses. Stats. at Large relating to District of Columbia, 52, sec. 441. See also *Smith v. Garden*, 28 Wis., 685; 5 Stats. at Large, 226, ch. 57.

It is claimed that the certificate of acknowledgment to the instrument of substitution is fatally defective in that it is not in accordance with the law of the District of Columbia, and hence that the instrument conferred no power upon Anderson, the substitute named therein, to execute the deed to the plaintiff as the attorney in fact of Nance and wife. The conclusive answer to this proposition is, that the certificate of the acknowledgment of a deed is no part of its execution, and the statute then in force (section 9, ch. 86, R. S. 1858) did not require that such certificate should be in any particular form. True, in certain cases the next section (chapter 86, sec. 10) required a certificate of the clerk or other certifying officer of a court of record, stating, among other things, that the instrument was acknowledged as well as executed according to the laws of the state, territory or district in which the acknowledgment was made; but instruments acknowledged before a commissioner appointed for that purpose by the governor of this state were expressly excepted from the operation of section 10, and to such instruments no such certificate of authentication was required. Section 10 was amended by chapter 188 of 1859, and the exception was extended to include instruments acknowledged before a notary public. The corresponding section in Taylor's Statutes (page 1144) refers

to the law of 1859, but through mistake the amendment is not incorporated in the compiled section.

The statute prescribes no particular form of a certificate of acknowledgment, where the acknowledgment is taken before such commissioner or a notary public, nor does it provide that such acknowledgment must be made in accordance with the laws of the place where made. It seems to have been, and we think was, the intention of the legislature, clearly manifested in the above-mentioned statutes, to provide that an acknowledgment taken before either of those officers, and the certificate of such acknowledgment, should be sufficient if the same complied substantially with our laws, even though it might not comply with the laws of the state or district where the same was made. Any other construction would fail to give effect to the exceptions in section 10, and in the amendatory act of 1859. Had the instrument of substitution in the present case been acknowledged in this state, the certificate thereof would undoubtedly have been sufficient. It follows from the view we have taken of the statutes in that behalf, that it is sufficient although made in the District of Columbia.

The present Revised Statutes amend the former statutes by providing that in all cases where deeds are executed out of this state they may be acknowledged in the form prescribed by our statute, and the form of certificate of the clerk of a court of record required by section 10 is changed and adjusted to such provision. R. S., 637, secs. 2218, 2219. The revisers say, in their note to section 2218, that the amendment is made "to supply an omission in the statute not probably generally known to exist." However, the revision makes no change in the law in respect to the manner of acknowledgment and the form of the certificate thereof, when the same is taken before a notary public. In such a case it merely expresses what was necessarily implied in the old statute.

It results, from the propositions above considered and deter-

mined, that the plaintiff is the owner in fee of the land claimed, and entitled to recover the possession thereof in this action.

We have considered this branch of the case on the hypothesis that a valid acknowledgment of the instrument of substitution is essential to the plaintiff's title. It is not here determined whether this hypothesis is or is not correct.

. III. There is a general averment of conspiracy and fraud in the counterclaim, but no particular facts are stated therein in support of the averment, except that the patent of the land to Nance was obtained from the United States, and the land conveyed to the plaintiff by Nance, when the plaintiff knew that it had previously been entered by the defendant's grantor, had been conveyed to the defendant, and was occupied by him. The proofs are no broader than the averment. It may be that the purchase of the land by the plaintiff, when he knew that the defendant, or his brother Timothy, had bought the land and paid for it supposing that he had a good title to it, was a harsh proceeding. It is not for this court to approve or disapprove it. The justice or injustice of the act is a matter for the consideration and determination of the plaintiff, and not for this court. His purchase of the land when he knew that another was in possession claiming title adversely to him in good faith, does not render the plaintiff's purchase fraudulent. Hence there is no element of fraud in the case affecting the plaintiff's title.

IV. The defendant answered in abatement the non-joinder as defendants of the widow and heirs of Timothy Leary, who paid the consideration for the land when the deed thereof was given by Doty and wife to the defendant. The circuit court evidently ruled against the defendant on this answer, for the verdict and judgment are in bar, and not in abatement. The ruling was correct. Although it appears that Timothy Leary paid for the land, there is no proof that such deed was taken by the defendant in his own name without the knowledge or consent of Timothy, or in violation of any trust. All reason-

able inferences from the testimony are to the contrary. In the absence of such proof, no trust relation between the defendant and Timothy, or his heirs, appears. As the proofs stand, had the title passed to the defendant under the deed from Doty and wife to him, his title would have been absolute as against Timothy and his heirs. R. S. 1858, ch. 84, secs. 7, 9. Hence, in no contingency had the widow and heirs of Timothy any such interest in the land as rendered them necessary parties in an action concerning it.

It is believed that the foregoing observations dispose of all material questions in the case. It results therefrom that the judgment of the circuit court must be reversed, and the cause will be remanded for a new trial.

*By the Court.*— So ordered.