[Civ. No. 337.   Third Appellate District.—August 27, 1907.]

HAROLD M. CRAGIE, WALLACE H. CRAGIE, and MAY
R. CRAGIE, Guardian of PETER W. CRAGIE, Minor,
Appellants, v. VIRGINIA L. ROBERTS, Administratrix
of Estate of EDMUND A. ROBERTS, Deceased, Re-
spondent.

PUBLIC LANDS—CHARACTER OF LAND—FALSE TESTIMONY—TRUST—
QUESTION OF FACT—EXCLUSIVE JURISDICTION OF LAND DEPARTMENT.
The land department of the United States has exclusive jurisdiction
to determine the mineral or agricultural character of its land, and
where it has been in fact determined by it to be mineral in charac-
ter, an agricultural claimant, who has had an opportunity to con-
test the question of fact in the land department, cannot apply to
the courts to enforce a trust against the mineral patentee, on the
ground that the patent was fraudulently obtained by false and
perjured testimony before the land department, and that the land
was in fact non-mineral, and was suitable only for agricultural pur-
poses—no question of law being involved in the decision of the land
department.

APPEAL from a judgment of the Superior Court of Ne-
vada County.   F. T. Nilon, Judge.

The facts are stated in the opinion of the court.

Leon E. Prescott and Tyrell & Hennessy, for Appellants.

Eugene Aram, and J. M. Walling, for Respondent.

HART, J.—This is a suit to secure a decree declaring cer-
tain property to be held in trust for the plaintiffs and to com-
pel a conveyance to them of the legal title thereto.

The complaint contains two counts, to both of which a gen-
eral and a special demurrer was filed.   Said demurrers were
sustained and judgment entered dismissing the action.   This
is an appeal from said judgment.

The complaint states that in the year 1852, one Harrison
McCharles, a citizen of the United States, over the age of
twenty-one years, entered and settled upon and took posses-

sion of the northwest quarter of the southeast quarter and the northeast quarter of the southeast quarter of section 19, in township 16 north, range 8 east, Mount Diablo base and meridian, lying in Nevada county and embracing about eighty acres of land. Said property is alleged to have been at that time public land of the United States, open to the right of purchase from the general government under the provisions of the pre-emption and homestead laws. It is stated that on the seventh day of May, 1869, said McCharles filed in the United States land office at Sacramento his pre-emption declaratory statement for the purchase of said land. It is further alleged that in the month of May, 1868, one E. W. Roberts, for the purpose of defeating the issuance of an agricultural patent to said McCharles, and for the purpose of obtaining the title to said land in his own name, "fraudulently caused and procured divers persons to file mineral claims against said land, claiming the same to be mineral in character." The said parties filing such mineral claims, it is charged, at the instance of said Roberts, assigned all of their rights, title and interest in and to their said claims to said Roberts. McCharles thereafter (on the sixteenth day of July, 1895) filed an application in the United States land office at Sacramento for the issuance to him of an agricultural patent for said property under the provisions of the homestead laws of the United States. In the year 1895, said Roberts died, and thereafter (on the fourteenth day of January, 1896) Edmund A. Roberts, defendant's intestate and heir at law of said E. W. Roberts, deceased, filed an application in the United States land office at Sacramento to purchase all of the land in dispute under his mineral entry thereof.

It appears from the complaint that McCharles, from the year 1852 to the month of February, 1900, had continuous possession of the land, had lived thereon with his family and had cultivated and improved the same; "that said improvements consisted in the erection of a dwelling-house upon said land and in fencing and taking care of the same, all of which amounted to over $3,000." A patent for said land as of agricultural character was refused McCharles by the Secretary of the Interior, who, after due proceedings, ordered a hearing before the register and receiver of the United States land office at Sacramento, to determine the character of said land—whether agricultural or mineral. Said hearing was accord-

ingly held on the twenty-third day of August, 1897. It is alleged in the complaint that, for the purpose of defeating the agricultural claim of McCharles and for the purpose of securing for himself said land, said Edmund A. Roberts caused certain false and perjured testimony to be introduced at the hearing and thereby imposed and committed a fraud upon said register and receiver. All the testimony offered in support of the mineral claim of said Roberts is alleged to have been false, untrue and perjured, and known by said Roberts to be false and untrue when it was so given. The complaint in the second count thereof alleges that certain witnesses—William and Francis Torpe—who promised McCharles to testify before the register and receiver that said land was agricultural and not mineral in character, were induced by means of intimidation and threats to remain away from said hearing and to refrain from so testifying; that one witness—McManus—testified that he had mined the land with William Torpe, and that it proved to be paying mineral land; that McManus would not so have testified had said Torpe been present, or if, under such circumstances, he had so testified, he would have been flatly contradicted by said Torpe. The complaint alleges that the land at all times was suitable for agriculture and not mining purposes, and that said Roberts and all the witnesses who testified in his behalf "well knew that said land was agricultural in character and easily cultivated and adapted to farming pursuits, and that it was non-mineral and absolutely worthless for mining and had no value as such."

It is alleged that, upon the conclusion of the hearing, the register and receiver reported to the commissioner of the general land office at Washington, D. C., that said land was mineral in character and more adapted to mineral than agricultural purposes, and recommended that said commissioner "cause to be issued to said Edmund A. Roberts, deceased, and to his heirs and assigns, a mineral application for said land"; that thereafter, and on the sixteenth day of September, 1904, there was issued to the heirs of said Roberts a mineral patent for said land. The complaint asserts that but for said alleged fraud so practiced by said Roberts upon the register and receiver of the land office by the introduction of false testimony, said land would have been determined to be agricultural and not mineral, and that said McCharles would have

been permitted by said register and said receiver to have completed and perfected his application for a patent for said land, and that an agricultural patent therefor would have issued to said McCharles and his successors and heirs.

From the complaint it appears that McCharles died on the ninth day of February, 1900; that on the first day of February, 1900, by a certain instrument in writing he transferred and deeded to the plaintiffs all his right, title and interest in and to said land covered by said homestead application.

The demurrers submit three distinct grounds, to wit: 1. That the court has no jurisdiction of the action; 2. That the complaint does not state facts sufficient to constitute a cause of action; 3. That the action is barred by the provisions of subdivision 4, section 338, of the Code of Civil Procedure.

We think that the general demurrer was properly sustained and likewise the special demurrer, based upon the ground that the allegations of the complaint were insufficient to give the court jurisdiction to try and determine the issues thereby raised. The first count of the complaint, in substance, merely charges the defendant's intestate with having procured his patent for the land from the government through false and perjured testimony. It is not alleged in said count, or anywhere in the complaint, that the patent was obtained through a mistaken notion or misapplication of the law by the officers of the land department of the government. If the complaint were held to be sufficient, a trial in a state court of the issues thus presented would result in a retrial of the issues of fact heard and determined by a tribunal specially appointed by the general government and having exclusive jurisdiction to pass upon all questions of fact involving the sale and disposition of the public land belonging to the government of the United States. The vital question at issue before the officers of the land department was whether the land in controversy was of agricultural or mineral character. A day was set for the hearing of the evidence to be addressed to the disputed question, and the parties given due notice thereof. The hearing or trial was had, evidence received and the judgment of the register and receiver was that the land was mineral in character, suitable only for mineral purposes. Upon the recommendation of the register and receiver, a patent for said land was finally issued to the intestate of the defendant. The grantor of the plaintiffs had full opportunity to present his

evidence and to meet and overcome the testimony of his ad-
versary, if he could. If the testimony produced by the lat-
ter was false and his witnesses suborned upon the question
of the character of the land, he was in as good a position to
know the fact as anyone present at the hearing, and it was
his duty then to have taken the necessary steps to bring the
facts to the attention of the officers before whom the trial
was proceeding. It does not appear from the averments of
the complaint that he undertook before the register and re-
ceiver to establish the charge of false and perjured testimony,
nor does it clearly appear that he pursued the matter by way
of appeal to the commissioner of the general land office or the
Secretary of the Interior. But, even if he had done so, the
decision of the land officers upon the question of the character
of the land would be conclusive upon the courts, and, there-
fore, not subject to review by them. In *Wormouth* v. *Gardner*,
125 Cal. 318, [58 Pac. 20], a case dealing with questions aris-
ing over a contest between claimants for a certain tract of
government land, it is said: " . . . That contest was one en-
tirely within the jurisdiction of the United States land de-
partment, that is, each party was endeavoring to get title to
what each admitted to be United States government land,
which was subject to disposition under the laws of the United
States. The land department, therefore, had exclusive juris-
diction to determine all facts which arose in the contest, and
in order to successfully attack the decision of the department,
the defendant in this present case would have to show that
such decision was founded upon an erroneous notion of the
law." That case also approvingly quotes the following lan-
guage employed in declaring the same doctrine in the case of
*Wormouth* v. *Gardner*, 112 Cal. 506, [44 Pac. 806] : "Whether
Throckmorton did, in fact, purchase the land for a valuable
consideration, or whether after his purchase he used and im-
proved and continued in the actual possession of the same,
according to the lines of his purchase, were questions of fact
to be determined by the Secretary of the Interior. The good
faith of Throckmorton in making the purchase, as well as
his belief that the land he purchased was included within the
original limits of the Mexican grant, were also facts to be
determined by that officer from all the circumstances under
which the purchase was made. Whether that officer properly
considered the weight to which the evidence before him was

entitled, or whether he drew correct conclusions from the evidence, his determination with reference to the facts, whether correct or erroneous, is conclusive upon the judicial tribunals. These tribunals cannot exercise a revisory jurisdiction over him in matters which are within the scope of the authority conferred upon him, but if, upon the undisputed facts, he made an erroneous application of the law pertinent to these facts, his action is open to review.'' A very interesting discussion of the principle under consideration may be found in *United States* v. *Throckmorton*, 98 U. S. 69, wherein Mr. Justice Miller, speaking for the court, among other things, says: ''To overrule the demurrer to this bill would be to retry, twenty years after the decision of these tribunals (the land offices of the government), the very matter which they tried, on the ground of fraud in the document on which the decree was made. If we can do this now, some other court may be called on twenty years hence to retry the same matter on another allegation of fraudulent combination in this suit to defeat the ends of justice; and so the number of suits would be without limit and the litigation endless about the single question of the validity of this document.'' (See, also, *Stewart* v. *McHarry*, 159 U. S. 643, [16 Sup. Ct. Rep. 117]; *Vance* v. *Burbank*, 101 U. S. 519; *United States* v. *White*, 17 Fed. 561.) Moreover, it is as well settled as any other rule of law that to set aside or annul upon the ground of fraud a former judgment or decree, except by some appellate tribunal, there must be alleged and proved fraud extrinsic and collateral to the question tried and decided. ''It is always a condition precedent to the proper action of a court of equity in interfering with a judgment or decree not before it upon appeal that facts be disclosed establishing that the matter now in the form of an adjudication is in truth, without any fault of the party seeking to avoid its effect, a determination in which he could not present his cause of action or his grounds of defense, as the case may be, to the consideration of the court, either because the court was not competent to hear it and to grant relief thereupon, or because he was prevented from presenting it or from having it properly considered through fraud, accident, surprise or for some other sufficient cause for the interposition of equity.'' (Freeman on Judgments, sec. 486.) In *Pico* v. *Cohn*, 91 Cal. 133, [25 Am. St. Rep. 159, 25 Pac. 970, 27 Pac. 537], Chief Justice Beatty, in a characteristically

forceful opinion, says: " . . . And we think it is settled be-
yond controversy that a decree will not be vacated merely be-
cause it was obtained by forged documents or perjured testi-
mony.  The reason of this rule is, that there must be an end
of litigation; and when parties have once submitted a matter,
or have had the opportunity of submitting it, for investiga-
tion and determination, and when they have exhausted every
means for reviewing such determination in the same proceed-
ing, it must be regarded as final and conclusive, unless it can
be shown that the jurisdiction of the court has been imposed
upon, and that the prevailing party, by some extrinsic or col-
lateral fraud, has prevented a fair submission of the contro-
versy.  What, then, is an extrinsic or collateral fraud, within
the meaning of this rule?  Among the instances given in the
books are such as these: Keeping the unsuccessful party away
from the Court by a false promise of a compromise, or pur-
posely keeping him in ignorance of the suit; or where an
attorney fraudulently pretends to represent a party, and
connives at his defeat, or, being regularly employed, cor-
ruptly sells out his client's interests."  (Citing *United States*
v. *Throckmorton*, 98 U. S. 69; see, also, *In re Griffith*, 84 Cal.
113, [23 Pac. 528], and *Langdon* v. *Blackburn*, 109 Cal. 36,
[41 Pac. 814].)

Tested by the rules declared by the foregoing authorities, it
is manifest that the averments in the first count of the com-
plaint are plainly deficient in the statement of a cause of ac-
tion.  There is nothing in said averments which shows that the
grantor of the plaintiffs was prevented by fraud extrinsic to
the proceeding from making out his case or from exposing
and thus destroying the force of any perjured testimony which
may have been offered in opposition to his claim as to the
character of the land and his right to a patent therefor under
his homestead filing.

Nor do the allegations of the second count of the complaint
make any better showing in an effort to state a cause of ac-
tion than those of the first.  It is therein stated, it will be
remembered, that the intestate of the defendant, by means
of threats and other fraudulent persuasions, induced certain
witnesses who, it is alleged, would have testified that the land
in controversy was solely adapted to agricultural and there-
fore absolutely valueless for mining purposes, to remain away
from the hearing before the register and receiver, thereby de-

priving the grantor of plaintiffs of the benefit of their testimony. We have already said that an opportunity was afforded McCharles of presenting his case fully and fairly and showing every fact essential to the establishment of his claim, including any alleged fraud which might have been practiced upon him or attempted to be practiced or imposed upon the officers before whom the contest was pending and tried. If, through his own fault, he failed to avail himself fully of all his rights at the hearing, there is, then, little if anything in his own conduct which would appeal to a court of equity to interpose its power in his behalf and relieve him of an alleged wrong due to his own inexcusable negligence. The complaint in the second count alleges "that before said hearing said Francis Torpe and William Torpe informed said Harrison McCharles that they would be witnesses for him at said hearing and testify as to the agricultural character of said land; that said William Torpe *at the time of said hearing* before said register and receiver, as aforesaid, informed said Harrison McCharles that he could not appear as a witness for him for the reason that if he did the said Edmund A. Roberts would interfere with him in his business affairs to such an extent that he would materially suffer."

It is obvious from this allegation that had McCharles himself exercised only ordinary diligence—if, having been informed of the conduct of his adversary in thus dissuading material witnesses for his side of the dispute from being present at the hearing of the contest at the very time the contest was proceeding, he had called the attention of the register and receiver to the fact—it cannot be doubted that he would have been given opportunity to have produced said witnesses or other witnesses by whom he could have proved the necessary fact if it were capable of proof, or in any event have weakened his opponent's case materially and maybe destroying it altogether by disclosing the alleged dishonest methods he was pursuing to obtain a mineral patent ·for the land. Besides, it is alleged in the complaint "that said Harrison McCharles, and since his death, plaintiffs have applied to the officers of the United States Land Office for the relief and redress herein complained of, but that they have refused any redress or relief."

It is not clear from the allegation just quoted, whether such application for relief was made by appeal to the commissioner of the general land office and to the Secretary of

the Interior within a reasonable time after the conclusion
of the hearing before the register and receiver, or at some time
subsequently to the issuance of the patent to Roberts.  But in
either case the allegation is of no assistance to the plaintiffs
in the statement of a cause of action.  If an appeal was taken
to the authorities at Washington, and the question of the
alleged fraud imposed upon the register and receiver pre-
sented there, the decision against the plaintiffs was an ad-
judication of said question and, under the principles to which
we have referred, cannot be re-examined in the courts.  The
authorities upon which plaintiffs rely to support their con-
tentions are not in point.  It is not doubted, as we have seen,
that a party may be relieved of a judgment which can be
shown to have been procured by some extrinsic fraud, or fraud
*dehors* the judgment; or that a judgment may be annulled
where it appears upon the face thereof that there was wanting
some fact essentially jurisdictional, or necessary to give the
tribunal jurisdiction to hear and determine the matter.  In
*Dolhequy* v. *Tabor,* 22 Cal. 280, all that is decided is (we
quote from the syllabus which correctly states the point)
that ''where, pending an appeal from the decision of the
Register and Receiver to the Commissioner of the General
Land Office, a third person, with full knowledge of its pend-
ency and the rights of the first applicant, procures the is-
suance to himself of a certificate of purchase, under the same
act, he will be deemed to hold the certificate in trust for the
former applicant in whose favor the appeal is decided, and
may be compelled by bill in equity to transfer it to him upon
being reimbursed his expenses.''  In *Bird* v. *Wilcox,* 45 Cal.
686, the complaint alleged that one Clark confederated with
the defendants to procure by false evidence, the cancellation
of the plaintiff's homestead entry, succeeded in so doing, and
that plaintiff was *never notified* that Clark was making such
application.  In *Merry* v. *Brodt,* 121 Cal. 332, [53 Pac. 318],
the evidence disclosed, among other acts of fraud, that ''these
proceedings were all had by defendant and the government
without any *actual notice* to plaintiffs, and consequently, with-
out objection upon their part.''  It will thus be observed that
there appeared in the cases mentioned, either through the
pleadings or proofs, some act of fraud sufficient to meet the
test declared by the chief justice in *Pico* v. *Cohn,* 91 Cal. 133,
[25 Am. St. Rep. 159, 25 Pac. 970, 27 Pac. 537], and to

thereby vitiate the proceedings upon which the decision rested. The other cases to which our attention has been invited by counsel, likewise contain a state of facts altogether different from the facts found here.

There are other points presented and discussed which the views we have expressed render it unnecessary to notice.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.