PHOENIX MUTUAL LIFE INSURANCE CO., Appellant, *v.*
BRAINARD, Respondent.

(No. 6,245.)

(Submitted February 17, 1928.   Decided March 3, 1928.)

[265 Pac. 10.]

*Public Lands—Desert and Homestead Entries—Fraud—Cancellation of Entries — Power of Department of Interior — Quieting Title—Estoppel by Judgment.*

Estoppel by Judgment—When Defense Lies.
  1.  The defense of estoppel by judgment does not lie unless it is clearly apparent that the precise question involved in a subsequent action was raised and determined in the former one.
Public Lands—Department of Interior has Authority to Cancel Final Certificate.
  2.  The Department of the Interior has authority to cancel a land entry and final certificate issued by the general land office.
Same—Decisions of Land Department—When Open to Re-examination by Courts, When not.
  3.  Ordinarily decisions of the federal Land Department are governed by the rules by which the validity or ordinary judgments are tested, and facts there determined are not subject to re-examination in any other tribunal in the absence of fraud, mistake or imposition, but where the department has misconstrued the law or disregarded it in its determination of facts, the patentee may, in a proceeding in equity, be declared to hold the land in question in trust for another.
Same—Homesteads—Alienation Prior to Patent Impliedly Prohibited.
  4.  While neither the original Homestead Act nor the one providing for enlarged homesteads expressly prohibits alienation prior to patent, the prohibition is implied from the requirements of sections 2290 and 2291, United States Revised Statutes, which prescribe that an entryman must make affidavit that the application is made in good faith and not for the benefit of another person, and that patent shall not issue until the entryman has made affidavit that no part of the land has been alienated, and secret

  1.  Elements necessary to conclusiveness of judgments in another action, see note in 18 Am. St. Rep. 790.  See, also, 15 Cal. Jur. 138; 15 R. C. L. 952.  Instances of conclusiveness of judgments, see notes in 14 Am. St. Rep. 250; 15 Am. St. Rep. 142.
  2.  See 21 Cal. Jur. 791, 792.
  3.  Conclusiveness of decisions of Land Department, see notes in 20 Am. Dec. 273; L. R. A. 1918D, 597.  See, also, 21 Cal. Jur. 790; 22 R. C. L. 306.
  4.  Alienability of settler's rights, see note in 31 Am. St. Rep. 192. See, also, 21 Cal. Jur. 780; 22 R. C. L. 322.

[82 Mont. 39.]

agreements in contravention of such prohibition are void as against public policy.

Same—Quieting Title—Who may Question Title to Public Lands.

5. Where the federal Land Department had declared a desert land entry void for fraud prior to patent and after the land had been conveyed to another and by him mortgaged as it had authority to do (see par. 2 above), the contention of plaintiff mortgagee, in an action to quiet title thereto, that no one but the government could question the validity of the title, under the Act providing for the annulment of patents at any time within six years after issuance for the making of a false affidavit by the entryman in regard to alienation, is without merit.

Same—Mortgages—Cancellation of Desert Entry for Fraud—Subsequent Entry by Same Entryman as Homestead—Acquisition of After-acquired Title Inuring to Benefit of Mortgage—Inapplicability of Doctrine.

6. Where an entryman of desert land conveyed it to another before patent who mortgaged it and thereafter the entry was canceled for fraud, whereupon the entryman filed upon the same land under the Enlarged Homestead Act and secured patent, the title thus acquired by him did not inure to the benefit of the mortgagee of his grantee of the desert land, the provisions of sections 6767, 6768 and 8255, relating to after-acquired title, having no application under such circumstances, since, to hold otherwise, would be in effect to nullify the Act of Congress prohibiting the alienation of public land prior to patent.

---

[1]  Judgments, 34 *C. J.*, sec. 1325, p. 915, n. 55; sec. 1343, p. 941, n. 72, p. 942, n. 73.
[2]  Public Lands, 32 *Cyc.*, p. 1012, n. 56, p. 1013, n. 57.
[3]  Public Lands, 32 *Cyc.*, p. 1020, n. 38, p. 1028, n. 91.
[4]  Public Lands, 32 *Cyc.*, p. 1067, n. 56.
[5]  Public Lands, 32 *Cyc.*, p. 1073, n. 13.
[6]  Public Lands, 32 *Cyc.*, p. 1075, n. 27.

*Appeal from District Court, Toole County; John J. Greene, Judge.*

ACTION by the Phoenix Mutual Life Insurance Company against L. L. Brainard, trustee and individually. From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. Freeman, Thelen & Frary,* for Appellant, submitted a brief; *Mr. James W. Freeman* argued the cause orally.

*Mr. Arthur F. Lamey* and *Mr. Carlton Fox,* the latter of the Bar of Wallace, Idaho, for Respondent, submitted a brief; *Mr. Fox* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, the Phoenix Mutual Life Insurance Company, has appealed from a judgment and decree quieting title to a certain tract of land, in Toole county, in defendant.

Plaintiff commenced action in July, 1926, to quiet title to the land in itself. The complaint filed alleged title in plaintiff by virtue of a foreclosure sale, followed by sheriff's deed, and alleged that the defendant, L. L. Brainard, trustee and individually, claimed some right or title to the land, but has no right, title or estate in the land. By answer and cross-complaint, defendant denied plaintiff's alleged title, and asserted title in himself, which allegation was denied by reply. The cause was tried to the court, sitting without a jury, and resulted in the judgment from which this appeal is prosecuted. Plaintiff makes but one assignment of error, to-wit, that the court erred in entering the judgment, for the reason that it is contrary to and not supported by, the evidence, and, under the evidence adduced, is contrary to law.

The evidence adduced is chiefly documentary, and there is no conflict therein. The court made elaborate findings of fact, all of which are supported by the evidence. The only question before us, therefore, is as to whether, under the law applied to the facts found by the court, defendant was entitled to judgment.

From the pleadings, the evidence, and the findings of the court, the following chronological history of the tract of land in controversy is assembled:

In 1910, one J. A. Van Buskirk, a rancher and sheepman of Van, Montana, was desirous of obtaining title to the land in question and induced one Arthur F. C. Bushe, then in his employ, to make a desert land entry thereon in the United States Land Office at Great Falls, and in October of that year Bushe attempted to convey his rights therein to the wife of Van Buskirk, by quitclaim deed. Mrs. Van Buskirk

thereafter filed on the land, but her entry was canceled in 1915 on the ground that she had already exhausted her rights under the Desert Land Act, and she thereupon re-quitclaimed to Bushe.

On April 21, 1917, Bushe received his "final certificate of entry," and, without waiting for patent, on June 16, 1917, executed and delivered to Van Buskirk a warranty deed to the land. Two days later Van Buskirk included this land in a mortgage executed to one Linke, who assigned it to this plaintiff. All of the instruments mentioned above were duly recorded in Toole county.

On this record and affidavits secured, the government instituted a contest against Bushe, Van Buskirk, and this plaintiff, for the cancellation of the "final certificate" and the entry. Plaintiff took an active part in protesting the cancellation, but without avail. The local land office declared that the transaction was a fraud upon the government and the deed to Van Buskirk but a subterfuge to accomplish that which the parties failed to accomplish by the quitclaim deed to Mrs. Van Buskirk, and thereupon rendered its decision of cancellation. From this decision Bushe and plaintiff jointly appealed to the General Land Office and from its decision to the Secretary of the Interior, where the decision was finally affirmed on May 17, 1919.

On July 5, 1919, Bushe filed upon this land as an additional homestead entry and proceeded to comply with the homestead laws.

On May 31, 1922, plaintiff commenced foreclosure proceedings on the Van Buskirk mortgage, and filed in the office of the county clerk a notice of the pendency of the action, but in neither the complaint nor the *lis pendens* was Bushe mentioned as a party defendant, and it does not appear that he had either notice or knowledge of the action.

On October 2, 1922, Bushe received his final certificate under his homestead entry.

[82 Mont. 39.]

On November 15, 1922, a decree of foreclosure and order of sale of the lands was entered in the foreclosure proceedings, followed, on December 15, by a sale of the property to one Moore.

Thereafter, on January 3, 1923, Bushe received patent to the land, and, in February, deeded it to defendant. Defendant, called by plaintiff, testified that he bought the land from Bushe through Van Buskirk, paying $1,800 therefor; that he did not have an abstract of title, but was an abstracter himself, and examined the records "as far back as the date of the issuance of the final certificate" on the homestead entry; that he had no knowledge that Bushe had ever made desert land entry on the tract, and did not discover the *lis pendens* filed in the foreclosure proceedings.

On January 11, 1924, Moore received a sheriff's deed to the land under the foreclosure sale and thereafter quitclaimed his interest therein to plaintiff. The action to quiet title in plaintiff followed, with the result above noted.

The argument of counsel for plaintiff on their assertion that the judgment is contrary to the evidence and against law falls under the following heads: (1) That the foreclosure decree is a final judgment, fair and valid on its face, and not subject to collateral attack, and is binding, "not only upon the parties of record," but also upon the respondent in this action, and thereby "any interest that Brainard  *  *  *  now claims was effectively foreclosed"; (2) that the Department of the Interior had no authority or jurisdiction to cancel the original final certificate of entry; (3) that the Acts of Congress under which Bushe filed on the land do not expressly prohibit the alienation of lands prior to patent or the issuance of the final certificate; (4) that the deed from Bushe to Van Buskirk was valid; and (5) that, under our statutes, which are controlling, the after-acquired title under the Bushe patent inured to the benefit of this plaintiff.

1. The first contention is based upon *res adjudicata* or estoppel by judgment; no authorities are cited in support of it.

The true test of the plea of once adjudicated is identity of issues. (*In re Pomeroy,* 51 Mont. 119, 151 Pac. 333.) It must be made to appear that precisely the same point was in issue upon the former trial, and, although rights, even between the same parties, have once been adjudicated, the judgment is not a bar to a subsequent suit to establish title on a different claim of right. (*Meyendorf* v. *Frohner,* 3 Mont. 282.) Unless it clearly appears that the precise question involved in the second case was raised and determined in the former, the judgment is no bar to the second action. (*Russel* v. *Place,* 94 U. S. 606, 24 L. Ed. 214 [see, also, Rose's U. S. Notes]; *Fehringer* v. *Martin Drug Co.,* 56 Colo. 445, 138 Pac. 1007.)

The main issue in this case, to-wit, whether, under the facts adduced and the law, the title acquired by Bushe under a new filing and under a different Act, after his original desert land entry had been canceled and his deed to Van Buskirk had been declared void, inured to the benefit of Van Buskirk's mortgagee, was not raised or determined in the foreclosure proceedings, and could not have been there raised, as Bushe was not made a party to the foreclosure proceedings. On this question Bushe was entitled to his day in court, and, if the foreclosure decree can be said to determine this question, Bushe's rights were determined without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. (*Windsor* v. *McVeigh,* 93 U. S. 274, 23 L. Ed. 915 [see, also, Rose's U. S. Notes]; *Scott* v. *McNeal,* 154 U. S. 34, 38 L. Ed. 896, 14 Sup. Ct. Rep. 1108.)

Without questioning the validity of the decree, it was not a bar to the assertion of defendant's rights in this action.

2. In support of their contention that the Department of [2] the Interior has no jurisdiction to cancel a final certificate issued by the land office, counsel cite only the federal case of *Wilson* v. *Fine* (C. C.), 40 Fed. 52, 5 L. R. A. 141, in which it is said that, if the government wishes to have a certificate set aside for fraud, it must ask redelivery in the court. This decision followed *Smith* v. *Ewing* (C. C.), 23 Fed.

741. Certain other federal courts of like standing took the opposite view (*United States* v. *Steenerson* (C. C. A.), 50 Fed. 504), and in *American Mortgage Co.* v. *Hopper* (C. C.), 56 Fed. 67, *Smith* v. *Ewing* and *Wilson* v. *Fine,* were expressly disapproved, an appeal was taken, and the decision affirmed by the circuit court of appeals for the ninth circuit (64 Fed. 553), and this same court of appeals again upheld the jurisdiction of the Land Department in this respect in *Northern Pacific Ry. Co.* v. *United States,* 176 Fed. 706.

On consideration of the question raised here, under fact conditions strikingly similar to those under which the Land Department canceled Bushe's desert land entry and declared his deed to Van Buskirk void, the Department of the Interior, in 1889, through its Secretary, maintained the authority and jurisdiction of the Department to cancel such entries and certificates, and declared that it had been exercised for half a century, recognized by Congress "and its existence abundantly adjudged by the supreme court of the United States." (9 Dec. Dep. Int. 269.) This declaration is justified by the authorities. (Sec. 7, Act of March 3, 1891, Chap. 561, 26 Stats. at Large, 1095, 1099; Comp. Stats. 1916, sec. 5113 (43 U. S. C. A., secs. 165, 1181); *Quinby* v. *Conlan,* 104 U. S. 420, 26 L. Ed. 800 [see, also, Rose's U. S. Notes]; *Lee* v. *Johnson,* 116 U. S. 48, 29 L. Ed. 570, 6 Sup. Ct. Rep. 249; *Parsons* v. *Venzke,* 164 U. S. 89, 41 L. Ed. 360, 17 Sup. Ct. Rep. 27; *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589, 44 L. Ed. 591, 18 Sup. Ct. Rep. 208; *Hawley* v. *Diller,* 178 U. S. 476, 44 L. Ed. 1157, 20 Sup. Ct. Rep. 986.)

The Land Department therefore acted within jurisdiction in canceling Bushe's entry.

3. It is next contended that, in spite of the decision of the Land Department, there is no express provision prohibiting alienation of land entered under the Enlarged Homestead Act, and the Van Buskirk deed is valid.

Ordinarily the decisions of the Land Department are [3] governed by the rules which test the validity of ordinary

judgments (*Elliott* v. *Robbins,* 33 Cal. App. 577, 165 Pac. 1042; *Cragie* v. *Roberts,* 6 Cal. App. 309, 92 Pac. 97), and facts there determined are not subject to re-examination in any other tribunal, in the absence of fraud, mistake or imposition (*Bond* v. *Walters,* 38 Cal. App. 245, 175 Pac. 909; *Quinby* v. *Conlan,* above; *Marquez* v. *Frisbie,* 101 U. S. 473, 25 L. Ed. 800; *Graham* v. *Great Falls W. P. & T. Co.,* 30 Mont. 393, 76 Pac. 808); but, if in the determination of facts, the Department has disregarded the law applicable thereto, or has erred in the construction of the law, in a proceeding in equity the patentee may be declared to hold the land for the benefit of another (*McLaren* v. *Fleischer,* 181 Cal. 607, 185 Pac. 967; *Quinby* v. *Conlan,* above; *Small* v. *Rakestraw,* 28 Mont. 413, 104 Am. St. Rep. 691, 72 Pac. 746; affirmed in 196 U. S. 403, 49 L. Ed. 527, 25 Sup. Ct. Rep. 285 [see, also, Rose's U. S. Notes]).

4. As this is a proceeding in equity and plaintiff contends [4] that the title acquired by Bushe should inure to plaintiff as the grantee of Van Buskirk, we will determine whether the Department disregarded or misconstrued the law applicable to the facts presented to it in the cancellation proceeding.

Bushe's homestead entry was made under the provisions of section 7 of the Act of February 19, 1909, as added July 3, 1911 (8 Fed. Stats. Ann. 613, and 1918 Supp. 703 [43 U. S. C. A., sec. 218]). That section provides that, under certain conditions, a homestead entryman "shall have the right to enter public lands subject to the provisions of this Act, not contiguous to his first entry," and is the amendment made to the original Act in 1916, and, while it contains no prohibition against alienation, it became a part of the original Act, of which section 2 (43 U. S. C. A., sec. 218) requires the entryman to comply with the provisions of section 2290 of the Revised Statutes of the United States (43 U. S. C. A., sec. 162), and section 4 (43 U. S. C. A., sec. 218) requires him, on final proof, to make affidavit in accordance with the provisions of section 2291 of the Revised Statutes (43 U. S. C. A., secs. 164, 231). The requirements, in this regard,

are therefore the same, whether the entry is made as in this case or under the original Homestead Entry Act.

Section 2290, to which reference is made, as amended March 3, 1891 (26 Stats. at Large, 1098, and as it now appears in 8 Fed. Stats. Ann. (2d) 555 [43 U. S. C. A., sec. 162]), provides that, on applying to enter land under the Homestead Act, the entryman must make and file an affidavit which shall state, among other things, that the application is made honestly and in good faith for the purpose of actual settlement and cultivation, and that he is not "acting as agent of any person * * * " nor in collusion to give another the benefit thereof, and that he had not "directly or indirectly made, and will not make, any agreement or contract in any way or manner, * * * by which the title which he * * * might acquire from the government * * * should inure, in whole or in part, to the benefit of any person, except himself."

Section 2291 (43 U. S. C. A., secs. 164, 231), above, provides in part, that "no certificate, * * * shall be given, or patent issued" until the entryman, on final proof, "makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight," which exception has no application here.

It is true that neither of these sections expressly prohibits alienation, and that they only provide the pains and penalties for perjury in case of false swearing. It is further true that title is alienable unless prohibited by the government, but this prohibition may be either express or implied. (*Jones* v. *Meehan*, 175 U. S. 1, 44 L. Ed. 49, 20 Sup. Ct. Rep. 1 [see, also, Rose's U. S. Notes].)

We have found two early cases, decided by state courts, holding that the above sections contain no prohibition against alienation and that a conveyance made before patent will pass title thereafter acquired by patent (*Knight* v. *Leary*, 54 Wis. 459, 11 N. W. 600; *Townsend* v. *Fenton*, 30 Minn. 528, 16 N. W. 421), but the supreme court of the United States has never so held.

In *Murray* v. *White,* 42 Mont. 423, Ann. Cas. 1912A, 1297, 113 Pac. 754, this court, in passing upon the position of the appellant that "a secret agreement by one to secure in his own name title to public land for the use and benefit of another, and to then convey to that other, is against public policy, illegal and unenforceable," said that "stated thus broadly, the premise is not true. It is only true when the contract deals with a character of entry with respect to which the statutes of the United States prohibit such a contract," citing decisions by the supreme court of the United States.

However, the highest authority, the supreme court of the United States, has held that contracts such as those above referred to, when made with reference to lands under the Homestead Act, *are* void as against public policy, thus declaring an implied prohibition which is clear from the very wording of the section referred to, as well as from the provisions of section 2288 (43 U. S. C. A., sec. 174), referred to in section 2291, permitting alienation of a portion of a homestead for certain purposes. (*Anderson* v. *Carkins,* 135 U. S. 483, 34 L. Ed. 272, 10 Sup. Ct. Rep. 905 [see, also, Rose's U. S. Notes] ; *Moss* v. *Dowman,* 176 U. S. 413, 44 L. Ed. 526, 20 Sup. Ct. Rep. 429; *Hartman* v. *Butterfield Lumber Co.,* 199 U. S. 337, 50 L. Ed. 217, 26 Sup. Ct. Rep. 63. See, also, *K. C. Lumber Co.* v. *Moores* (C. C. A.), 212 Fed. 153; *Harris* v. *McCrary,* 17 Idaho, 300, 105 Pac. 558; *Carley* v. *Gitchell,* 105 Mich. 38, 55 Am. St. Rep. 428, 62 N. W. 1003; *Moore* v. *Moore,* 130 Cal. 110, 80 Am. St. Rep. 78, 62 Pac. 294.)

To permit the alienation of the homestead prior to patent would be contrary to the spirit and policy of the Homestead Act, and would defeat its purpose as expressed by this court in *First State Bank* v. *Bottineau County Bank,* 56 Mont. 363, 8 A. L. R. 631, 185 Pac. 162.

It is apparent, therefore, that the Land Department neither failed to apply nor misconstrued the law applicable to the facts before it in the cancellation proceeding.

5. Counsel for plaintiff argue that Congress has indicated [5] the manner in which the government will take care of cases in which an entryman has made false affidavits in regard to alienation, by providing for the annulment of patents at any time within six years after issuance (26 Stats. at Large, 1093, 1099), and that this method of procedure laid down excludes others than the government from questioning the validity of title. The answer to this argument is that the government has already disposed of the fraud perpetrated on the government with reference to the desert land entry, by its cancellation of that entry and the declaration that the deed executed to Van Buskirk was, by reason of that fraud, void.

6. We must, therefore, consider that the final position taken [6] is that, although Bushe's desert land entry was canceled for fraud and his deed to Van Buskirk was declared void for the same reason and the plaintiff was duly made a party to the cancellation proceeding and took an active part therein, when Bushe was permitted to file upon the same land, under the homestead laws, and to perfect title thereto, he must be presumed to have done so with the intention of making good his former default by permitting his after-acquired title to inure to the benefit of his prior grantee.

Here, the former entry being entirely wiped out by the decision of the Land Department, we must consider the law applicable to a case wherein it is shown that a homestead entryman, by a void deed, attempted to convey land before he had filed upon land under the Homestead Act.

Plaintiff contends that the title acquired by Bushe, by patent issued on his homestead entry, does inure to the benefit of this plaintiff, under the provisions of sections 6867 and 6868, Revised Codes of 1921, which read as follows:

"6867. Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors."

"6868. Every grant of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or incumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded."

A related section bearing on this question is: "8255. Title acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security for the debt, in like manner as if acquired before the execution."

If these sections of our Codes are controlling here, as contended by counsel for plaintiff, then, immediately upon issuance of patent to Bushe, his title inured to the benefit of Van Buskirk and, through his after-acquired title, inured to the plaintiff as security for the debt due from him to the plaintiff.

This court has never been called upon to apply sections 6867 and 6868, above, to fact conditions even approximating those in the case at bar, but has had occasion to apply the analogous provisions of section 8255 to just such a situation.

*Lohman State Bank* v. *Grim,* 69 Mont. 444, 222 Pac. 1052, was based upon the following facts: Grim made homestead entry on a tract of land and thereafter he and his wife borrowed money and signed a note therefor, executing a mortgage on the land as security for its payment; later Grim was divorced from his wife, abandoned the homestead and relinquished it to the government, whereupon the wife made homestead entry thereon. It was held that she, being a signer of the note and mortgage, her after-acquired title inured to the mortgagee as security for the mortgage debt; the court holding that the giving of a mortgage in good faith to secure a legitimate debt is not deemed an alienation within the meaning of, and is not forbidden by the spirit of, the federal statute against alienation, citing *First State Bank* v. *Durand,* 69 Mont. 184, 222 Pac. 434, and further holding that the entryman has an inchoate right capable of ripening into full title and the right to the possession of the land itself, which has some value, which he might sell with his improvements, or might sell his entry by relinquishment, citing *Hills* v. *Johnson,* 52

Mont. 65, 156 Pac. 122, and *Selway* v. *Daut,* 67 Mont. 262, 215 Pac. 646.

In *Stockmen's National Bank* v. *Sutherland,* 71 Mont. 457, 230 Pac. 369, as in this case, the entryman first filed a desert land entry, which was canceled by the government, and thereafter made homestead entry upon the land, which he perfected. While he held the land under the Desert Land Act (35 Stat. 48) he mortgaged it as security for the repayment of borrowed money, and this court held, on the authority of *Lohman State Bank* v. *Grim,* above, that the title which the debtor acquired by his homestead patent inured to the mortgagee as security for his debt.

These decisions, however, rest upon the holding that the mortgaging of land, in good faith, is not a prohibited alienation. The distinction between them and the case at bar is therefore clear. What was done in those cases did not violate the prohibition of Congress; what was attempted in this case, or what plaintiff's counsel contend was effected, is in direct violation thereof. If our statute applies, then the situation of the parties is no different than it would have been had Congress not prohibited such alienation, and the Act of Congress had no force or effect in this state.

The question then arises as to whether the state enactments referred to can nullify the Act of Congress. To this question there can be but one answer, and it has been answered by the supreme court of the United States in *Anderson* v. *Carkins,* above, wherein it is said: "The law of Congress is paramount; it cannot be nullified by direct Act of any state, nor the scope and effect of its provisions set at naught indirectly."

Sections 6867 and 6868 have no application to a situation such as here existed, and the title acquired by Bushe under his homestead patent did not inure to the benefit of plaintiff.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.