STATE EX REL. POWERS, RELATOR, *v.* DALE, COUNTY CLERK, RESPONDENT.

(No. 3,301.)

(Submitted March 4, 1913.   Decided April 7, 1913.)

[131 Pac. 670.]

*New   Counties—County   Seat—Unincorporated   Towns—Eligibility.*

1. *Held,* that an unincorporated town was eligible to become a candidate for county seat of a county proposed to be created under Chapter 112, Laws of 1911.

MANDAMUS by the state on the relation of William Powers against J. W. Dale, county clerk and recorder of Valley county. Writ issued.

*Messrs. Norris, Hurd & Lewis,* for Relator; *Mr. Edwin L. Norris* argued the cause orally.

*Mr. D. M. Kelly,* Attorney General, *Mr. Louis P. Donovan,* Assistant Attorney General, *Mr. Thomas Dignan,* and *Messrs. Walsh, Nolan & Scallon,* for Respondent, submitted a brief; *Mr. Wm. Scallon* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

*Mandamus* to the county clerk of Valley county to compel the placing of the name of Bainville upon the ballot as a candidate for county seat at a special election for the creation of the county of Sheridan. Upon the hearing it was ordered that the per-
[1] emptory writ issue as prayed. The effect of this ruling was to decide that an unincorporated town is eligible as a candidate for the county seat of a county proposed to be created under the so-called Leighton Act. (Laws 1911, p. 205 *et seq.*) It seems desirable, in compliance with section 6249, Revised Codes, that we give briefly the reasons which have moved us to this conclusion.

The Leighton Act was approved March 6, 1911, and its provisions touching the establishment of the county seat of a proposed new county are: "There shall also be printed upon said ballot the words 'for the county seat,' and the names of all cities or towns which may have filed with the county clerk a petition * * * nominating any city or town within the proposed new county for the county seat, and the voter shall designate his choice for county seat by marking a cross (X) opposite the name of the city or town for which he desires to cast his ballot. * * * In case any city or town fails to receive a majority of all the votes cast, then the city or town receiving the highest number of all votes cast, shall be designated as the temporary county seat. * * * If upon the canvass of the votes cast at such election it appears that sixty-five per cent of the votes cast * * * are for the new county * * * the board of county commissioners shall * * * declare such territory duly formed and created as a county * * * and that the place receiving the highest number of votes cast at said election for county seat shall be the county seat of said county. * * * "

The contention in the brief of respondent is that the term "city or town," as used in the foregoing extract, refers only to an incorporated city or town, for the following reasons: That, to be a city or town, a community must be incorporated, other-

wise it is merely a village or camp; that, whenever the legislature has intended an Act to apply to so-called unincorporated cities or towns, it has explicitly so declared; that, in the absence of a contrary intention, the term "city or town" must be construed with reference to section 3202, Revised Codes, in which it is provided that "a city or town is a body corporate and politic," *etc.;* that there is nothing in the Leighton Act from which it can be reasonably inferred that the term "city or town," as used therein, is not intended to mean an incorporated city or town.

The term "town" has a general and popular, as well as a technical, meaning. In common parlance it has had an almost unvarying significance; derived from the Anglo-Saxon "tun," it originally meant "a collection of houses inclosed by a hedge, wall, or palisade" (Century Dictionary); it still means "any considerable collection of dwelling-houses, as distinguished from the adjacent country" (Standard Dictionary), or "an aggregation of houses so near to one another that the inhabitants may fairly be said to dwell together" (38 Cyc. 506). That it is used in this sense many times in our Codes, and that in the legislative, as well as in the popular, mind there is such a thing as an unincorporated town which is not a mere village or camp, is readily demonstrable. For instance, Chapter 107, Acts of the Twelfth Legislative Assembly (Laws 1911, p. 190), was approved on the same day and was under consideration by the legislature at about the same time as the Leighton Act. Chapter 107 is "An Act providing for bonding fire districts in unincorporated cities and towns," and clearly presents, under the term "unincorporated city or town," the idea of a community entirely beyond the stage of a mere village or camp. So, also, in sections 3514 and 3519 of the Revised Codes, there is a distinct recognition of a town as an entity without incorporation or municipal character. Again, in Article VIII, section 1, the Constitution of Montana provides that the judicial power of the state shall vest in certain enumerated tribunals and such inferior courts as may be established in any "incorporated city or town." This use of the term "incorporated," as applied

to cities and towns, clearly connoting the opposite idea of unincorporated cities or towns, is repeated in sections 3212, 3214, and 3481 of the Revised Codes. It is quite true that in both the Constitution and the Codes the term "city or town" is used without any definite prefix, but under circumstances which make it clear that only incorporated cities or towns is meant; and a further investigation also discloses the frequent legislative use of the term "city or town" without any definite prefix, but under circumstances which would render it absurd to hold that only incorporated cities and towns is meant. Illustrations of this are: Constitution, Article XV, section 12; Chapter 58, Acts of the Twelfth Legislative Assembly; Revised Codes, section 6339, subdivision 10; sections 8483, 8535, 8547, 8548, 8582, 8765, 8771, 8834. It seems clear, therefore, that no consistency whatever has been observed in the legislative use of the term "town"; and it is not correct to say that, whenever an unincorporated town is meant, it has been explicitly so declared, or that the use of the term "town," without the definite prefix, is in all cases intended to be an incorporated town, within the meaning of section 3202. On the contrary, the true inference is that the term "town," as used in the Code, is a term of varying significance, and so uncertain that a construction resting wholly upon it would be highly unsatisfactory.

Accepting, however, as correct the canon of construction proposed by respondent that, where a term has both a technical and a common meaning, the technical meaning must be applied whenever reasonably possible, and assuming that section 3202 is a technical definition for all purposes when the contrary does not appear, we think it is not difficult to see that in the Leighton Act the term "town" is not to be taken in the sense in which it is defined in section 3202. Counsel for respondent say "that the legislature is presumed to know existing statutes and the state of the law." Very well, among the existing statutes, and included in the state of the law when the Leighton Act was passed, may be found the provisions of sections 2851 to 2856, Revised Codes. These provisions date back many years and to a time when incorporated towns in Montana were few and far

between; to a time when county seats were notoriously situated at, or removed from, or moved to, unincorporated towns.  These provisions in effect say that a county seat may be moved "from the place where it is fixed, by law or otherwise, to another place"; that, in voting at an election to move a county seat, the elector must vote "for the place" he prefers by marking opposite the name of "the place"; that, if two-thirds of the legal votes cast by those voting on the proposition are in favor of "any particular place," the board must give notice, in which "the place selected" must be declared the county seat.  No mention whatever is made in these provisions of a city or town, and no reason whatever appears for holding that, in this proceeding for removing a permanent county seat, the place selected must be an incorporated city or town.  So that, if under the Leighton Act only incorporated towns are contemplated as eligible for county seat, we are brought to one of two remarkable situations: Either (1) as to all counties created under that law, the county seat must be an incorporated town, while in all other counties it need not be; or (2) the temporary county seat must be incorporated, but the people of the county may promptly thereafter remove it to a town that is not incorporated.  Such a conclusion has no reason apparent or suggested to support it.

Furthermore, three days after the passage of the Leighton Act, there was approved Chapter 135 (Acts of Twelfth Legislative Assembly), which is "An Act to provide for the designation of temporary county seats and for the location of permanent county seats in new counties or in counties in which the permanent county seat has not been located."  In this Act we look in vain for the term "city or town," or for any evidence of intention to require incorporation as a qualification for county seat.  On the contrary, the language is that the board of county commissioners shall by resolution "designate some place" within the county as temporary county seat, and "the place so designated" shall be the temporary county seat; if the commissioners cannot agree, each shall write the name of the "place" he favors on a slip, and the slips shall be put in a receptacle and one of them drawn out, and the "place" named on the slip so drawn

shall be the temporary county seat. At the succeeding general election, the matter must be submitted to the people, and at such election the elector is required to write on his ballot the name of the "town or place" at which he desires the permanent county seat to be located, and a ballot so marked and cast is to be deemed a vote for the "town or place" so marked; and the "town or place" found to have received a majority of the votes cast shall be the county seat, *etc.* This Act is so nearly contemporaneous with the Leighton Act that the incongruity between its manifest intent and the construction sought by the respondent to be given to the Leighton Act must have been obvious to the legislature, if, as a matter of fact, any such construction of the Leighton Act had occurred to it as possible. If it cannot be supposed that the same session intended results so incongruous upon subjects so intimately  related, then we must adopt the only harmonizing conclusion, *viz.*, that neither Act presupposes incorporation as a qualification to  become a county seat.

The respondent has failed to suggest any hypothesis, and none has occurred to us, for supposing that to the legislative mind any special reason appealed for preferring an incorporated city or town to one not so endowed. But there is, we think, a consistent purpose to be seen in the Leighton Act to submit the entire matter to the vote of the people, and it is in line with that purpose that we hold the choice of fixing the county seat to be theirs, as among all feasible locations, whether in incorporated towns or not.

It is ordered that the relator have of the respondent his costs herein incurred, which are taxed at $290.60.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.