## IN RE POMEROY.

### (No. 3,530.)

(Submitted May 11, 1915. Decided June 12, 1915.)

[151 Pac. 333.]

*Escheat—Recovery of Property—Statutes—Constitution—Payment of State Funds—Appropriation Necessary—Estoppel—Res Adjudicata.*

*Res Adjudicata*—Test of Plea—Estoppel.

1. The true test of the plea once adjudicated is identity of issues; hence where in a second proceeding to recover an escheated estate the same relief as that demanded in the former one was sought, but by virtue of a statute enacted since the first judgment was rendered, the conditions had changed and the issues were different, petitioner was not estopped to prosecute the new proceeding.

Legislature—Powers—Constitution.

2. In so far as the state or United States constitutions offer no restrictions, the state legislature has plenary law-making power.

Escheat—Statute—Constitutionality—Retrospective Legislation.

3. *Held*, that Chapter 132, Laws of 1913, providing for the recovery of escheated property, is not retrospective within the meaning of that term as used in section 13, Article XV of the Constitution.

Same—Prerequisites.

4. Property cannot be declared escheated unless the owner died intestate and without heirs.

[As to what is and proceedings to perfect escheat, see note in 29 Am. Dec. 232.]

Same—Interest of State in Property.

5. Where, at the time an estate was declared escheated and ordered distributed to the state, a son of the decedent was living, the order of the court did not devest him of any interest in the property, but the state held the proceeds as an involuntary trustee for the use and benefit of the heir.

Rights and Remedies—Power of Legislature.

6. Whenever there is a right, even though imperfect, the Constitution does not prohibit the legislature from giving a remedy.

Retrospective Legislation.

7. While the state is forbidden, under section 13, Article XV, of the Constitution, to impose upon its municipal subdivisions a liability in respect to a transaction or consideration already passed, it may impose such liability upon itself.

[As to retrospective statutes, when valid, see notes in 6 Am. Dec. 730; 10 Am. Dec. 131; 111 Am. St. Rep. 455.]

Escheat—Payment of State Funds—Appropriation Prerequisite—Constitution.

8. Where a judgment ordered the state auditor to draw his warrant on the treasurer for the payment of money held as escheated property, although the legislature had not made an appropriation for that purpose, it was invalid as in direct conflict with section 34, Article V, and section 10, Article XII, of the Constitution.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

Proceeding by Wm. B. Pomeroy to recover property declared escheated. Judgment for petitioner and the state appeals. Modified and affirmed.

*Mr. D. M. Kelly,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Appellant, submitted a brief.

*Messrs. Walsh, Nolan & Scallon,* for Respondent, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1902, William B. Pomeroy, a citizen of the United States, instituted a proceeding in the district court of Lewis and Clark county, the object of which was to secure an adjudication of his right to certain moneys then in the hands of the state treasurer, and representing the value of property formerly belonging to the estate of Thomas M. Pomeroy, deceased. The district court granted the relief sought, but on appeal to this court by the state, the judgment was reversed and the cause remanded for dismissal. (*In re Pomeroy,* 33 Mont. 69, 81 Pac. 629.) In 1913 the legislature amended section 7359, Revised Codes, by the addition of the following: "Provided, however, that any person claiming the proceeds of the sale of escheated property or property alleged to have escheated, which have been paid into the treasury of the state of Montana, at any time before the first day of July, 1895, shall have one year after the passage of this Act in which to file his petition for the recovery of such proceeds, as hereinabove provided." (Laws 1913, p. 483.) This present proceeding was commenced in April of the same year. Issues having been joined, the trial of the cause resulted in a judgment for petitioner from which the state has appealed.

1. It is the contention of the attorney general that the former [1] decision by this court constituted an adjudication of all

the matters and things involved in the present proceeding, and is conclusive against the petitioner's right to have them determined a second time. A reference to our former decision will suffice for a statement of the facts out of which this litigation arises, and will disclose that two questions, or two phases of one question, only were determined, *viz.:* (a) That under the Compiled Statutes of 1887, in force at the time the estate of Thomas M. Pomeroy was being administered by the probate court of Missoula county, no provision whatever was made whereby a citizen of the United States claiming property which had been turned over to the territory as an escheat could obtain relief, and (b) that, though section 2253, Code of Civil Procedure of 1895, now section 7359 above, provides a remedy, it is prospective in its operation and confers the right only upon a claimant to an estate wherein the judgment was rendered subsequent to July 1, 1895, the date the Code became effective. In other words, we determined only that the state had not consented to be sued for the recovery of money which had belonged to an estate and which had been transferred to the state treasury prior to July 1, 1895. The order distributing the proceeds of the Thomas M. Pomeroy estate to the territory of Montana was made and entered in 1889 and the money was actually covered into the treasury in 1890. We held, therefore, that there was not any statute in force at the date of our decision under which the petitioner could establish or enforce his claim.

There is not any controversy over the rules of law applicable to the plea of *res adjudicata.* The parties to this and the former proceeding are the same. The subject matter in controversy in the two instances is identical. But the issue presented in the two causes is not the same, and this fact destroys the force of the plea once adjudicated. The rule is well stated as follows: "The true test is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend upon its determination, a former judgment between the same parties will be final and conclusive in the second if that same point or question was in issue and adjudicated in the first

suit; otherwise not." (23 Cyc. 1300.) If this petitioner was seeking relief under or by virtue of the laws in force at the time he instituted the former proceeding, the judgment in that instance would be conclusive in this. But such is not his position. He seeks the same relief, but by virtue of a statute enacted since the judgment in the former proceeding was rendered. The conditions have changed and with them the issue as formerly made. In 23 Cyc. 1161 it is said: "The estoppel of a judgment extends only to the facts as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts intervene before the second suit, furnishing a new basis for the claims and defenses of the parties, respectively, the issues are no longer the same, and consequently the former judgment cannot be pleaded in bar." And again: "The estoppel of a judgment extends only to the facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants." (*Id.*, p. 1290; see, also, *Guilford* v. *Western Union Tel. Co.*, 59 Minn. 332, 50 Am. St. Rep. 407, 61 N. W. 324.) We think the petitioner is not estopped by our former judgment to prosecute this proceeding.

2. The authority of the legislature to enact the amendment to section 7359 is called in question, and the provisions of section 13, Article XV of the state Constitution invoked. That section reads: "The legislative assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operation, or which imposes on the people of any county or municipal, subdivision of the state, a new liability in respect to transactions or considerations already passed." In so far as our Constitution or the supreme law of the land offers no restrictions, our [2] lawmakers have plenary legislative power. (*Northern Pacific Ry. Co.* v. *Mjelde*, 48 Mont. 287, 137 Pac. 386; *State ex*

*rel. Hillis* v. *Sullivan,* 48 Mont. 320, 137 Pac. 392; *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078.)

[3] The prohibition of section 13 above is directed only against (a) retrospective laws for the benefit of a corporation, an individual or association of individuals, and (b) laws which impose upon the people of a county or municipal subdivision of the state a new liability in respect to transactions or considerations already passed. Is the Act in question retrospective within the meaning of that term as employed in section 13 above? A brief reference to some legislative history reflects upon the subject. Under the Compiled Statutes of 1887, a nonresident alien was allowed five years from the death of a decedent within which to claim his interest in the estate from the court having jurisdiction of the administration. (Second Div., Comp. Stats., sec. 553.) If he failed to present his claim within that period, the property was reduced to the possession of the territory, and a further period of five years was allowed for the presentation of his claim. (Sec. 554.) With respect to a citizen or a resident alien, the situation was somewhat anomalous. There was not any limitation prescribed for the presentation of his claim. It might be done at any time before the property was turned over to the treasurer as property which, for want of a claimant, the court assumes had escheated. But once turned into the treasury, no provision whatever was made for his relief, though in fact the property had not escheated and the court had been mistaken in assuming that the intestate had no heirs.

Under the Compiled Statutes, if the intestate in fact left no heirs, the property passed *eo instanti* to the state and no inquest of office or other proceeding was necessary to vest title. Under the Codes of 1895 the title to property owned by one who died intestate without heirs did not vest immediately in the state. To complete the escheat a proceeding in the nature of an inquest of office was necessary, and then the determination of the court, though in form a decree that the property belonged to the state, operated only to convey a title defeasible for the term of twenty years, and complete upon the expiration of that period if a valid

adverse claim was not presented. (Code Civ. Proc., secs. 2250–2253.) And this is the state of the law to-day. (Rev. Codes, secs. 7356–7359.) Since 1895, property which the state claims as escheat is held for a period of twenty years to await the action of anyone who may be entitled to it. Under any and all [4] of these statutes, however, property could not escheat unless the owner died intestate without heirs. (Sec. 535, Second Div., Comp. Stats. 1887; sec. 1852, Civ. Code 1895; sec. 4820, Rev. Codes.) The decree of distribution under the Compiled Statutes, or the judgment on inquest of office under the Codes, could not determine that to be a fact which was not a fact. In the Thomas M. Pomeroy estate the court considerably adjudged only that Thomas M. Pomeroy died intestate leaving no heirs so far as could be ascertained. Since the fact was that he left a son, this petitioner, surviving him, the property did not escheat, but title to it passed immediately upon his death to his son, subject only to the control of the court and to the possession of the administrator for the purpose of administration. (Sec. 532, Second Div., Comp. Stats. 1887; sec. 1851, Civ. Code 1895; sec. 4819, Rev. Codes.) The order of the probate court [5] that it be distributed to the territory of Montana did not devest this petitioner of his title or confer upon the territory or its successor, the state, any interest in the property, but the state has held it as an involuntary trustee for the use and benefit of its owner.

With this situation confronting it in this instance and presumably in many others of like character, the legislature in 1913 enacted the amendment to section 7359 above. The Act gave recognition to present subsisting rights from which the owners were debarred for lack of a remedy. Prior to this enactment the state had not consented that it might be sued for the recovery of money received prior to July 1, 1895, and held under the claim of escheat, even though the claim had no foundation in fact. The statute does not create any right. The property involved here has belonged to the petitioner throughout all these years. The state has held it until such time as the legislature

should provide means by which the owner could establish his claim. The legislature recognized that such a claim in all equity and good conscience the state should pay, and undertook by the Act in question to supply the needed remedy. In *Hepburn* v. *Curts*, 7 Watts (Pa.), 300, 32 Am. Dec. 760, the court **[6]** announced the general principle of law that whenever there is a right, even though imperfect, the Constitution does not prohibit the legislature from giving a remedy. (Cooley's Const. Limitations, sec. 534.) In principle, the decision of this court in *State ex rel. Northwestern Nat. Bank* v. *Dickerson*, 16 Mont. 278, 40 Pac. 698, supports the conclusion we have reached that the Act in question is not retrospective in the sense employed in section 13, Article XV, above.

While the state is forbidden to impose upon a county or mu- **[7]** nicipal subdivision a liability in respect to a transaction or consideration already passed (*Dolenty* v. *Broadwater County*, 45 Mont. 261, 122 Pac. 919), it is left free to impose such liability upon itself, so far as anything to the contrary has been called to our notice.

3. A more serious objection to section 7359 and to the judg- **[8]** ment entered in this proceeding arises upon a consideration of section 34, Article V, and section 10, Article XII, of the Constitution. Those sections provide: "No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof, except interest on the public debt." (Sec. 34, Art. V.) "All taxes levied for state purposes shall be paid into the state treasury, and no money shall be drawn from the treasury but in pursuance of specific appropriations made by law." (Sec. 10, Art. XII.) Section 7359, as amended, directs that if a lawful claimant establish his title to money held by the state in its treasury and claimed as an escheat, the judgment in the proceeding shall order the auditor to draw his warrant on the treasury for the payment of the same. The judgment in the present proceeding follows the language of that statute. There is not any contention that an appropriation to meet this claim

has ever been made. In so far as section 7359 above authorizes a judgment that the auditor draw his warrant in the absence of an appropriation, it is in direct conflict with the mandates of the Constitution and invalid. But the provision for establishing the claim, and the objectionable one with reference to its enforcement, appear so distinct that it cannot in reason be said that the one would not have been enacted without the other. There appears to be no objection to the statute in so far as it authorizes the petitioner to establish his right to the property as a claim against the state which in equity and good conscience it ought to discharge, leaving to subsequent legislative assemblies to provide by adequate appropriations for such claims as they arise and are adjudicated.

The proceeding is remanded to the district court, with direction to eliminate from the judgment the provision directing the state auditor to draw his warrant for the amount of petitioner's claim, and when so modified it will stand affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.