DAVIS, APPELLANT, *v.* STEWART, GOVERNOR, ET AL.,
RESPONDENTS.

(No. 4,127.)

(Submitted January 7, 1918.  Decided February 18, 1918.)

[171 Pac. 281.]

*Constitution—School Lands—Sale—"Town"—Three-mile Limit*
*—Definition.*

Constitution—School Lands—Sale—"Town"—Definition.

 1.  *Held,* that "town" within the meaning of section 1, Article XVII, of the state Constitution, prohibiting sales of school lands within three miles of the limits of a town, is an aggregation of inhabitants and houses used for various purposes so close to one another that the inhabitants may be said to dwell together, upon a regularly platted town site, whether incorporated or not.

Same—Town—Three-mile Limit—How Measured.

 2.  *Held,* that the three-mile distance from the limits of towns within which school lands cannot be sold under the inhibition of section 1, Article XVII, of the Constitution, must be measured from the nearest point upon the town-site plat.

*Appeal from District Court, Chouteau County; John W. Tat-*
*tan, Judge.*

ACTION by Albert H. Davis against Samuel V. Stewart, as Governor and others, constituting the State Land Board. Judgment for defendants and plaintiff appeals. Affirmed.

*Messrs. Stranahan & Stranahan,* for Appellant, and *Mr. Wm.*
*T. Pigott,* of Counsel, submitted a brief; *Mr. Pigott* and *Mr.*
*C. W. Wiley,* also of Counsel, argued the cause orally.

*Mr. S. C. Ford,* Attorney General, and *Mr. R. L. Mitchell,*
Assistant Attorney General, for Respondents, submitted a brief;
*Mr. Mitchell* argued the cause orally.

HONORABLE A. C. SPENCER, a Judge of the Thirteenth Judicial District, sitting in place of the Chief Justice, delivered the opinion of the court.

This action was submitted to the district court of Chouteau county, upon an agreed statement of facts, presenting for decision the following question: "Is Square Butte a 'town' within the meaning of Article XVII, section 1, of the Constitution of the state of Montana, so as to prevent the sale of a quarter-section of state land lying within three miles thereof?" The court answered in the affirmative and, in accord with the stipulation that such answer should be followed by a dismissal of the action, judgment for the defendants was entered. From that judgment the plaintiff appeals.

The agreed statement shows: That at an auction duly advertised by the respondents and held May 4, 1915, there was offered for sale a certain tract of state lands containing 172.72 acres and lying within three miles of Square Butte in Chouteau county; that the appellant who was and is a person qualified to purchase state lands attended said sale and made the highest and best bid for said tract; that the same was struck off to him at his bid, to-wit, $20 per acre, which was the price at which said land had been appraised by the state; that he thereafter tendered to the proper officers fifteen per cent of the purchase price of said tract and stands ready and willing to pay for the same and to do all things necessary as purchaser thereof, but the respondents have refused and still refuse to proceed further with the sale because, after the sale and before the tender, the state land officers discovered the fact that the tract in question lies within three miles of Square Butte; "that on May 4, 1915, Square Butte was an aggregation of dwelling-houses and stores located upon a branch line of the Chicago, Milwaukee & St. Paul Railway, between Lewistown and Great Falls, Montana, in section 3, township 20 north, range 12 east; that Square Butte consists of a railway station, postoffice, two general mercantile stores, one delivery barn, three grain elevators, one school, eight dwelling-houses, and ten small cabins or shacks, one hotel and saloon; that Square Butte is a platted town site, the plat of which has been duly filed in the office of the clerk and recorder of Chouteau county, Montana, and that it has a population of

seventy people, and that no proceedings have ever been had at any time for the incorporation of the said Square Butte.''

Accepting the foregoing as all of the facts essential to a determination of the question involved in this appeal, and keeping especially in mind those portions of the agreed statement which detail the number and kind of buildings in Square Butte and the population thereof; that Square Butte is a platted town site, and that the plat thereof is duly filed in the office of the clerk and recorder of Chouteau county, it becomes necessary, if the judgment of the lower court is to be sustained, (a) to delve into a labyrinth of uncertain definitions of the word ''town'' and (b) to consider the prevailing conditions and surrounding circumstances, the subject matter under consideration and the objects to be attained at the time of the adoption of sections 1 and 2 of Article XVII, as part of our state Constitution in 1889. Those sections read:

''Sec. 1. All lands of the state that have been, or that may hereafter be granted to the state by Congress, and all lands acquired by gift or grant or devise, from any person or corporation, shall be public lands of the state, and shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised; and none of such land, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, be ascertained in such manner as may be provided by law, be paid or safely secured to the state; nor shall any lands which the state holds by grant from the United States (in any case in which the manner of disposal and minimum price are so prescribed) be disposed of, except in the manner and for at least the price prescribed in the grant thereof, without the consent of the United States. Said lands shall be classified by the board of land commissioners, as follows: First, lands which are valuable only for grazing purposes. Second, those which are principally valuable for the timber that is on them. Third, agricultural lands.

Fourth, lands within the limits of any town or city or within three miles of such limits: Provided, that any of said lands may be re-classified whenever, by reason of increased facilities for irrigation or otherwise, they shall be subject to different classification.

"Sec. 2. * * * The lands of the fourth class shall be sold in alternate lots of not more than five acres each, and not more than one-half of any one tract of such lands shall be sold prior to the year one thousand nine hundred and ten (1910)."

(a) To arrive at a definite point in number of inhabitants or [1] number or character of business houses, or geographical limitations, when a community assumes the dignity of a town in its popular sense is quite impossible, and a review of various definitions by the lexicographers and text-writers, as well as decisions by the courts of last resort throughout the country, enlightens us but little, and discloses the fact to be that whether a certain community is to be classed as a town or not, as contemplated by Article XVII, section 1, of our Constitution, depends entirely upon its own surroundings, such as number of inhabitants, number of buildings, and character of business houses, whether located upon a regularly platted town site or not, and why it aspires to be promoted to the more exalted station in its growth.

No one would undertake to say that a motley collection of ten buildings, housing as many or more persons, and irrespective of whether such buildings were business houses or not, and irrespective of its regularity in geographical location, was under all circumstances a town, any more than would anyone deny that, in popular significance, at least, an aggregation of 600 houses furnishing shelter for an equal number of people, used for residences, mercantile stores, blacksmith-shops, saloons, warehouses, markets, a postoffice, and other business purposes, was a town, even though unincorporated. Certainly, it could not be successfully contended that a community qualified to meet the statutory requirements for incorporation would not be entitled to be dignified by the word "town."

In *State ex rel. Powers* v. *Dale,* 47 Mont. 227, Ann. Cas. 1914D, 227, 131 Pac. 670, the court said: ''The term 'town' has a general and popular, as well as a technical, meaning. In common parlance it has had an almost unvarying significance; derived from the Anglo-Saxon 'tun,' it originally meant 'a collection of houses inclosed by a hedge, wall, or palisade' (Century Dictionary) ; it still means 'any considerable collection of dwellinghouses, as distinguished from the adjacent country' (Standard Dictionary), or 'an aggregation of houses so near to one another that the inhabitants may fairly be said to dwell together' (38 Cyc. 596). * * * It is quite true that in both the Constitution and the Codes the term 'city or town' is used without any definite prefix, but under circumstances which make it clear that only incorporated cities or towns is meant; and a further investigation also discloses the frequent legislative use of the term 'city or town' without any definite prefix, but under circumstances which would render it absurd to hold that only incorporated cities and towns is meant. * * * It is not correct to say that, whenever an unincorporated town is meant, it has been explicitly so declared, or that the use of the term 'town' without the definite prefix, is in all cases intended to be an incorporated town.'' (See, also, *Millville Gas Light Co.* v. *Vineland L. & P. Co.,* 72 N. J. Eq. 305, 310, 65 Atl. 504; *Ralls* v. *Parrish,* 105 Tex. 253, 147 S. W. 564.)

In popular use and acceptance the words "city," "town," and "village" present nothing obscure. ''The word 'town' is more comprehensive than either of the others; it is a generic word, applicable as well to a city as to a village. In England a city was distinguished from other towns by the fact that it had a cathedral, and was the residence of a bishop, but in this country the name 'city' is used ordinarily to designate the larger classes of towns. The name 'village' always carries to the mind the idea of a small urban community. A city is a town, and a village is a town, but the word 'city' or 'village' indicates the size of the town.'' (*State ex rel. Scott* v. *Lichte,* 226 Mo. 273, 126 S. W. 466. See, also, *Territory ex rel. Kelly* v. *Stewart,*

1 Wash. 98, 8 L. R. A. 106, 23 Pac. 405; Rapalje & Lawrence Law Dictionary, 1282; 1 Blackstone, 114; 2 Bouvier Law Dictionary, 603.) The principal and essential idea conveyed "is that of oneness, community, locality, vicinity * * * a body of people collected or gathered together in one mass * * * and having a community of interest because residents of the same place." (*City of Denver* v. *Coulehan,* 20 Colo. 471, 27 L. R. A. 751, 39 Pac. 425; *Siskiyou L. & M. Co.* v. *Rostel,* 121 Cal. 511, 53 Pac. 1118.) In fact, the word "town" in its popular significance has been accepted by all the writers to mean substantially the same thing, although defined in different language, and when you have an aggregation of inhabitants and houses used for various purposes so near to one another that the inhabitants may fairly be said to dwell together, you have a town in the common acceptation of the word. Of course, the statutes of this state leave no uncertainty as to what a town is, viewed in the light of the statutes covering municipal incorporations, and for all purposes of statutory construction in that connection the matter is settled and requires no comment. (Rev. Codes, sec. 3208, and amendments, and sections 3202 and 3206.)

(b) But to say that Square Butte is a town as popularly defined, only brings us halfway to the conclusion sought upon this appeal. Did Article XVII, section 1, of our Constitution contemplate an "incorporated town," and, if not, what was intended by the use of the word "limits"? From what point would the three-mile limit be measured? Article XVII, section 1, of the Constitution must be construed in the light of conditions prevailing at the time of its enactment in 1889, and after observing the language used by the framers of our Constitution, the subject matter under consideration, and the object to be attained (*State* v. *Keeler,* 52 Mont. 205, 217, Ann. Cas. 1917E, 619, L. R. A. 1916E, 472, 156 Pac. 1080, citing *State ex rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589; *State ex rel. Hillis* v. *Sullivan,* 48 Mont. 320, 325, 137 Pac. 392; *State ex rel. Mc-Gowan* v. *Sedgwick,* 46 Mont. 187, 127 Pac. 94; *Northern Pac. Ry. Co.* v. *Mjelde,* 48 Mont. 287, 137 Pac. 386), all of which

justify the conclusion that the framers of the Constitution did not intend "incorporated" towns when they used the word "town" without prefix in section 1 of Article XVII, but that undeniably they intended towns as popularly contemplated, and had in mind the then existing statutes covering the location of "town sites" when they used the word "limits."

At the time of the Constitutional Convention in 1889 the Congress of the United States had granted to the state of Montana portions of this great empire for the support, use and maintenance of our common schools. Discussion was had at that convention as to the manner of handling, using or disposing of such lands for the advantage and best interests of the schools, and to that end the debate covered the question whether the towns referred to should be "incorporated" or unincorporated; whether the distance from the limits of the town was to be one mile or six; whether the word "limits" sufficiently designated a point from which to measure distance if the town were unincorporated, and the object of extending the distance to more than one mile, *viz.*, to lessen the probability of sale until such time as the town near which the land was situated had had an opportunity to grow, and thereby enhance the value of said lands and secure more money to the state for the benefit of its common schools.

The matter came before the convention upon "propositions 34 and 35" offered for adoption as parts of the Constitution. Proposition 34 contained a classification identical with that found in section 1 of Article XVII above, except as to lands of the fourth class, and these, as stated in proposition 34, were "lands within the corporate limits of any incorporated town or city within a mile of such limits and which are worth more than $50 per acre." According to the record of the convention proceedings (pages 2385 to 2387, 2391, 2428 to 2430, all inclusive), Mr. Myers, of Yellowstone, offered an amendment to strike from the language above quoted the word "incorporated" and the words "and which are worth more than $50 per acre," stating that his objects were "to take the sense of the convention as

to whether they desire to retain the lands adjacent to incorporated cities only or incorporated towns," and "as to whether they desire to sell lands that are worth less than $50 per acre." In the discussion which followed, as elsewhere in the debates of the convention, its attention was called to the fact that relatively few of the urban communities in Montana had been incorporated; and Mr. Collins, of Cascade, expressing favor toward Mr. Myers' amendment, said: "But I would like to see it go a little further. The one-mile limit is too near; it should be made five or six miles, because school lands, within six miles of any growing little town in Montana, or any city or incorporated town, are valuable." Other expressions were in similar vein, and in consequence the convention struck out the words "corporate" and "incorporated" in proposition 34, leaving the word "town" without any prefix, and extended the distance to three miles, seen in the present provision. And as we are amply authorized to examine the proceedings of the constitutional convention to assist in determining the intent of the convention and the understanding they had of the meaning of certain words and phrases (*State* v. *Camp Sing,* 18 Mont. 128, 142, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516; *Northern Pac. Ry. Co.* v. *Musselshell County, ante,* p. 96, 169 Pac. 53), it conclusively appears that all argument is now foreclosed as to the sense in which the word "town" was used, and whether incorporated or unincorporated towns were referred to and intended.

But lastly, conceding Square Butte to be a town, though [2] unincorporated, it yet could not meet the requirements of the Constitution without "limits." The agreed statement of facts discloses that: "Square Butte is a platted town site, the plat of which has been duly filed in the office of the clerk and recorder of Chouteau county." Upon page 2430 of the proceedings of the convention, *supra,* we find the attention of the convention called to the fact that there might be difficulty in defining the limits of an unincorporated town, whereupon Mr. Burleigh, of Custer county, observed that the "existing law" required the limits to be defined. The existing laws referred to were the

Compiled Statutes of 1887, sections 2011 to 2039, inclusive, and contained provisions for applications by the citizens of any town, whether incorporated or *unincorporated,* to create or own town sites; for surveying the land comprising the proposed town site and submitting plat and survey to the board of county commissioners; for laying off the town site into lots, blocks, streets and alleys, and filing plat thereof in the office of the clerk and recorder after acceptance by the board of county commissioners, *etc.* (Secs. 2011–2039, inclusive, Comp. Stats. 1887.)

So we must assume that when the convention adopted Article XVII, section 1, it did so with full knowledge of the existing laws covering platted town sites, and contemplated towns located upon town sites as the same were platted and filed in the office of the clerk and recorder, and that therefore the three-mile distance from the limits of the town would necessarily be measured from the nearest point shown upon the town-site plat.

From all of the foregoing it follows that Square Butte, located upon a platted town site, with its stores, elevators, school, post-office and residences, is, though unincorporated, a town within the meaning of Article XVII, section 1, of the Constitution of the state of Montana, so as to prevent the sale of a quarter-section of state land lying within three miles thereof; that there was no error as complained of by appellant; and that the judgment of the lower court should be affirmed. It is so ordered.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.