POLLARD, RESPONDENT, v. MONTANA LIQUOR CONTROL BOARD ET AL., APPELLANTS.

(No. 8,384.)

(Submitted December 4, 1942. Decided December 16, 1942.)

[131 Pac. (2d) 974.]

*Mr. R. V. Bottomly,* Attorney General, *Mr. Clarence T. Hanley,* Assistant Attorney General, and *Mr. T. H. MacDonald,* of Counsel, for appellants, submitted an original and a supplemental brief; *Mr. MacDonald* argued the cause orally.

*Mr. George D. Toole,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, a liquor dealer in Rocker, Montana, was advised by defendant board that his license fee for the year 1942 would be $600. He, deeming the proper fee to be $200, tendered that amount to the board, which was refused. This action was then brought in the district court to obtain a declaratory judgment to determine the rights of the parties. Additional parties defendant were brought into the case. As to all of them the board contended their fee should be $600, whereas they contended the proper fee for each of them was $200. Some of them paid the sum of $600 under protest on the agreement that it would be held in a separate fund to await court determination as to the proper fee. Some paid the fee without protest. All seek a refund of $400.

The controversy is the aftermath of the case of *Vantura* v. ██ ██ *Montana Liquor Control Board,* 113 Mont. 265, 124 Pac. (2d) 569. In that case we said that since Chapter 84 of the Laws of 1937 dealt specifically with incorporated towns, and the amended Acts, Chapter 221, Laws of 1939, and Chapter 163, Laws of 1941, dealt with towns generally and without any definite prefix, the latter Acts must be construed as having application to towns whether incorporated or unincorporated. The question now presented to us arises in this way: The board contends that when towns are referred to in Chapter 163, Laws of 1941, only incorporated towns are intended as defined in sections 4955 and 4959 Revised Codes. It contends that since all of the claimants are operating in unincorporated communities and within five miles of Butte, they take the Butte rate, whereas claimants contend they operate in a town of less than 2000 people and take the $200 rate.

The use of the word "town" in statutes has been construed to mean an unincorporated town as well as an incorporated one, (*State ex rel. Powers* v. *Dale,* 47 Mont. 227, 131 Pac. 670, Ann. cas. 1914D, 227; *Davis* v. *Stewart,* 54 Mont. 429, 171 Pac. 281.)

We adhere to the view that the word "towns" as used in Chapter 163, Laws 1941, has application to unincorporated towns as well as to the incorporated ones.

The question then arises as to what is an unincorporated town, or what is a "town" within the meaning of Chapter 163. In its broad sense, a town is "an aggregation of houses so near to one another that the inhabitants may fairly be said to dwell together." (*State ex rel. Powers* v. *Dale,* supra.) Generally it may be said too that in order for such an aggregation of houses containing inhabitants to constitute a town, they must constitute a distinct place with a name. (*Mahood* v. *State,* 101 Fla. 1254, 133 So. 90; *People* v. *Van Nuys Lighting District of Los Angeles County,* 173 Cal. 792, 162 Pac. 97, Ann. Cas. 1918 D, 255.) With these criteria in mind, we proceed to a consideration of the precise question as to whether each of the claimants here is operating in a town or whether each one operates in the city of Butte or in a place not a town but within five miles from Butte.

The case was submitted to the district court on an agreed statement of facts. The court found for plaintiff and the additional party defendants and against the board. The board has appealed. The agreed facts are meager. Those applicable to Rocker are as follows: That plaintiff and two of the additional defendants own liquor licenses there; that Rocker has a population of approximately 100 persons, is located upon a regularly platted townsite, has two retail liquor establishments, a general store, a school and about 20 residences; that it is unincorporated and has no city government.

The facts as to Meaderville are these: Eight people own liquor licenses there; it is unincorporated, has approximately 160 houses, several mines, three blocks of stores and night clubs, a church, gas stations and a fire department. It is situated on a platted townsite and has a population of between 500 and 600 people. There is at least one-half mile of unoccupied space between Meaderville and the city limits of Butte.

48

As to Centerville the facts show that it is an unincorporated community with three retail liquor saloons, a church, school, fire department, stores and boarding houses. It has about 500 residences with various streets and alleys and a population of about 1500 to 1800 people.

Nissler, it is stipulated, is unincorporated and consists of about eight houses, one store, three gas stations, two retail liquor saloons and has a population of about 30 people.

As to West Butte, it is stipulated that it is an unincorporated community situated upon a platted townsite, has three stores, a gas station, a retail liquor saloon, several hundred houses, and a population of approximately 1500 people.

East Butte is agreed to have a population of about 100 people, has a school house, one grocery store and two saloons.

The other applicants operate retail liquor saloons outside the city limits of Butte but at certain street numbers on Harrison Avenue, South Montana, East Granite Street, East Park Street, North Main Street, and at other points unnamed except as to street intersections. The streets are extensions of Butte streets and not streets of any other city or town.

In addition to the stipulated facts, we are at liberty to take judicial notice of the geography of Montana. Investigation discloses that Rocker is on the map. It occupies an enviable position. It is near the junction of the Dillon highway (U. S. Highway No. 91), where it intersects with the main thoroughfare between Butte and Anaconda. The Butte, Anaconda and Pacific Railway and the Oregon Short Line Railroad pass through it. It has made rapid strides toward becoming an important railroad center. To the south is situated the Beaverhead Valley, traversed and beautified by the Beaverhead River. This valley has long been famous. It is adjacent to the Big Hole country, noted for its livestock industry. Believe it or not, much of the products of this productive area, as they enter the channels of trade, pass through the town of Rocker. The entire output of the Anaconda smelter, as it is placed in interstate commerce, passes through Rocker. It stands as Mon-

tana's Rock of Gibraltar witnessing, as it passes by, a vast amount of commerce destined for remote parts of the world. Is Rocker a town? The answer must be in the affirmative.

We pass then to Meaderville. The only map of Montana available to us fails to reveal its name. But this fact is not conclusive. It was once contended that Duluth, Minnesota, was inconsequential because of the difficulty of finding it on the map. J. Proctor Knott, a Kentucky Congressman, in humble apology for not being able to locate it on the map, in 1871, said of it: "I was confident it existed somewhere, and that its discovery would constitute the crowning glory of the present century, if not of all modern times. I knew it was bound to exist in the very nature of things; that the symmetry and perfection of our planetary system would be incomplete without it; that the elements of material nature would long since have resolved themselves back into original chaos, if there had been such a hiatus in creation as would have resulted from leaving out Duluth. In fact, sir, I was overwhelmed with the conviction that Duluth not only existed somewhere, but that, wherever it was, it was a great and glorious place. I was convinced that the greatest calamity that ever befell the benighted nations of the ancient world was in their having passed away without a knowledge of the actual existence of Duluth; that their fabled Atlantis, never seen save by the hallowed vision of inspired poesy, was, in fact, but another name for Duluth; that the golden orchard of the Hesperides was but a poetical synonym for the beer gardens in the vicinity of Duluth." All this and more could be said of Meaderville. In determining whether it is a town consideration should be given to the noble souls who live in the place as well as to those who formerly lived there and have passed to their reward. Those who live there are firm in the belief that they are residents of Meaderville. To say to them that they do not live in a town, but rather in the city of Butte, would be as productive of violent protests as if a Japanese bomb were exploded in their midst. It hardly is necessary to discuss the question

whether Meaderville is a town, except for the benefit of those who have never been there. There you will find more night clubs and beer parlors per square foot than in any other place in Montana. No other place of which we are aware will dish out a greater variety of food under the title "ravioli." Let no one doubt that Meaderville is a town.

What about Centerville? It too has not had its name placed on the map. But this is a temporary fault only. Just give it time. As its name implies, it is centrally located. Like Knott said of Duluth, "it is so exactly in the centre of the visible universe that the sky comes down at precisely the same distance all around it." From its vantage point can be seen at a glance what is conceded to be the richest hill on earth. It is hemmed in on the north by Walkerville, on the east by Meaderville, and on the south by Butte, but to the west it has unlimited opportunity for expansion. One other factor must be considered here that lends support to the conclusion that Centerville is a town. Unlike Rocker, in the very heart and center of Centerville there stands a church. In close proximity the "preacher's modest mansion rose." Of the preacher it can truthfully be said he never "had changed, nor wished to change his place." He is "more bent to raise the wretched than to rise," as he has "watched and wept, and prayed and felt for all." In vain he has toiled from year to year to, "Teach erring man to spurn the rage of gain." Preparing his sermons in Spencerian style, by preachment as well as practice, he proclaims the gospel teaching that man does not live by bread alone. This church, with its influence for good, stands as a living testimonial that the brethren of Centerville dwell together in unity so as to make of that community a town within the meaning of Chapter 163, Laws 1941. This court has not the hardihood to say to the people of Centerville that they do not live in a town but that they are part and parcel of the city of Butte. We hold that Centerville is a town.

Nissler is situated a short distance from Rocker. It is listed on the map and has about the same qualifications as Rocker

for a town. What we have said about Rocker applies also to it.

Also West Butte is found on the map and is entitled to be classed as a town, separate and apart from the city of Butte. East Butte does not appear on the map, but we think oversight or inadvertence on the part of those who prepared our maps should not penalize the people of East Butte, nor deprive them of the advantage of being divorced from the city of Butte proper. Notwithstanding this grave error on the part of those who prepared our maps, we hold that East Butte is a town. ·

As to the other places claimed also to be towns, we agree with the board that they do not fall in that category. In the first place, they are nameless. The people residing in those respective communities would be shocked to learn that they are living in a nameless town having an identity separate and apart from the city of Butte. Their respective communities have neither seat, situs nor soul separate and apart from Butte. Their social and cultural life is that of the city of Butte. Though not within the city limits of Butte, these claimants must be held not to be operating in any other town but have their places of business to all intents and purposes in Butte. The streets are but extensions of city streets of Butte. The board is correct in exacting a fee from them in the sum of $600.

While there does not appear to be any good reason why their fee should be $600 per annum, while the operators in Meaderville, Rocker, Centerville, and other communities which we have held to be towns, only pay a fee of $200, the remedy, if one is forthcoming, should emanate from the legislature.

One other point must be noticed. Two claimants paid the $600 fee without protest, and the money found its way into the state treasury. The board contends that in view of the cases of *In re Pomeroy,* 51 Mont. 119, 151 Pac. 333, and *First National Bank* v. *Sanders County,* 85 Mont. 450, 451, 279 Pac. 247, it requires a legislative Act to extract the money from the state treasury. Since these claimants are held not to be operating in a town separate and apart from Butte, their proper fee

is $600 and hence they are not entitled to a refund, and this point requires no consideration.

The judgment will be modified in accordance with the views herein stated and as thus modified will stand affirmed.

The court will consider written briefs by respective parties of costs of this appeal in view of the result.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, MORRIS and ANDERSON concur.

PER CURIAM.—On December 29, 1942, the parties to the above matter filed a stipulation that each party shall pay his own costs upon this appeal, and accordingly it is so ordered.

Rehearing denied December 30, 1942.